In the Matter of SAMUEL SHILLITANI, Petitioner, against LEWIS J. VALENTINE, as Police Commissioner of the City of New York, et al., Respondents.*

Supreme Court, Special Term, New York County, January 24, 1945.

* See, also, *Matter of Manfredonio* v. *New York Telephone Co.*, 183 Misc. 770, and *Matter of Dees C. & A. Music Co.* v. *N. Y. Telephone Co.*, 184 Misc. 269.— [REP.

*Millard E. Theodore* for petitioner.

*Ignatius M. Wilkinson, Corporation Counsel (Harry Zamore* of counsel), for Lewis J. Valentine, as Police Commissioner of the City of New York, respondent.

*Jordan R. Bassett, Irving W. Young* and *Ralph W. Brown* for New York Telephone Company, respondent.

EDER, J. Contested mandamus proceeding under article 78 of the Civil Practice Act for a final order to compel the restoration of telephone service to the petitioner at his apartment residence which is occupied by his family and himself. The petitioner is a restaurateur and is also a real estate operator; he was previously engaged for some twenty years in the laundry business; so far as the record discloses he is a respectable individual.

The telephone has been used in the customary manner in which it is used in the home except that the petitioner, an ardent bettor on horse races, used it frequently for placing wagers with book-makers, calling them from his home. The police, upon mere assumption that he was operating as a book-maker, and without making the slightest effort to obtain legal evidence of the fact, if such it was, and without legal process of any sort authorizing entry or search and seizure, forcibly entered the apartment over the protests of the petitioner and his wife and proceeded to search the premises. The telephone was in the bedroom; the petitioner was there and had been placing wagers over the telephone; he had some racing form data there and also a pad on which he made notations of his wagers; these were seized by the police; in addition one or two incoming calls were answered by one of the police officers who gave testimony which sought to convey a rather vague hint that bets were being forwarded to petitioner as a book-maker. Following this, one of the officers physically disrupted the service by removing the instrument and thus terminated all service there; all this occurred over the protest of the petitioner. Then followed his arrest upon a charge of book-making; after a trial in the Magistrate's Court the petitioner was found guiltless and thereupon discharged.

It is a strange anomaly that such tactics should be indulged in by law enforcement officers when the same end could be lawfully achieved by making application to the court, upon a proper and sufficient showing, for authority for legal entry and lawful search and seizure. Ours is a government of laws and adherence to legal modes of procedure is expected of law enforcement officers and agencies; respect for law cannot be fostered by such conduct and methods as were here resorted to. Constitutional rights, the right of privacy and of the security of the home are very sacred and when ignored and disregarded merit definite rebuke.

Following the petitioner's acquittal in the Magistrate's Court, he demanded of the company the restoration of the telephone

service; the company referred the matter to the police department with which it has an understanding or arrangement to the effect that whenever a subscriber's telephone service is interrupted by the police or whenever the police request the termination of service upon an alleged violation of law, the company will, as in the instant case, terminate the service and will not thereafter restore it until the police department has approved an application for the re-establishment of said service; and the company states that in the instant case the police department has not approved the restoration of petitioner's telephone service for which reason it has refused to restore it.

It seems clear to me that the company's refusal to restore the service for the reason stated constitutes no defense to this proceeding and that petitioner is entitled to an order in the nature of mandamus compelling the restoration of the telephone service.

Co-operation between the police department and the telephone company to combat crime is a commendable arrangement, but however laudable the object and purpose they may not interfere with and cannot be permitted to interfere with or destroy the legal rights of telephone subscribers; nor can any such arrangement override the statutes relating to that subject; these laws are superior to any agreement or arrangement which the police department and the telephone company may enter into. (*People* v. *Brophy,* 49 Cal. App. 2d 15.)

The defendant telephone company is obliged by law to furnish its service and equipment to the public in general, and impartially, and to provide instrumentalities and facilities which shall be adequate in all respects (Public Service Law, § 91, subd. 1). " It is the duty of telephone companies to furnish equal facilities and conveniences, impartially to all, irrespective of age, race or habits, and serve all these alike on offering to comply with their reasonable regulations " (Jones on Telegraph and Telephone Companies, § 258). But though a telephone company is required by the general rule to furnish its service and facilities to the public generally, this rule is subject to exception that it may not be forced to furnish its instruments and service to persons for the purpose of using them for an illegal business. (*People ex rel. Restmeyer* v. *N. Y. Telephone Co.,* 173 App. Div. 132; *Matter of Cullen* v. *New York Tel. Co.,* 106 App. Div. 250; *Godwin* v. *Telephone Co.,* 136 N. C. 258; Jones on Law of Telegraph and Telephone Companies, § 258.) This is plain, common-sense reasoning.

Aside from this a telephone company may not refuse to furnish service and facilities because of mere suspicion or mere belief that they may be or are being used for an illegitimate end; more is required (*People* v. *Brophy*, 49 Cal. App. 2d 15, *supra; The Western Union Telegraph Company* v. *Ferguson*, 57 Ind. 495); nor because the character of the applicant is not above reproach, nor because such person is engaged in immoral or illegal pursuits, where they have no connection with the service applied for (*Godwin* case, *supra*). In the *Brophy* case (*supra*, pp. 33–34), the court said: "The telephone company has no more right to refuse its facilities to persons because of a belief that such person will use such service to transmit information that may enable recipients thereof to violate the law than a railroad company would have to refuse to carry persons on its trains because those in charge of the train believed that the purpose of the persons so transported in going to a certain point was to commit an offense, or because the officers of such company were aware of the fact that the passengers were intent upon visiting a bookmaking establishment upon arrival at their destination, which establishment was maintained for the purpose of unlawfully receiving bets on horse races."

These established rules for guidance are wholesome, logical and sound.

As hitherto mentioned, the petitioner by this proceeding seeks an order in the nature of mandamus to compel the restoration of his telephone service; it is directed not to the telephone company alone but also to the defendant Police Commissioner; as against him an order in the nature of mandamus is sought directing him to give his approval and that of the police department to the defendant telephone company to restore to petitioner telephone equipment and service and as to the company directing it to thereupon do so.

As to the defendant Police Commissioner the petition and proceeding must be dismissed for the reason that it is not maintainable as to him and he is neither a necessary nor a proper party to the proceeding. Mandamus is a remedy which may be invoked to compel a public officer to do an act or discharge a duty specifically required of him by law to be performed (Civ. Prac. Act, § 1287); where no duty or obligation rests upon him, mandamus may not be employed as a remedy.

The Public Service Commission is vested with complete jurisdiction and with general powers in respect to and over telegraph and telephone corporations (Public Service Law, art. 5); the Police Commissioner is permitted to maintain a police

telephone system, very expressly limited to the purposes and business of the department, but, however, " subject to the general laws of the state " (New York City Charter [1938], § 438).

Neither the Police Commissioner nor the police department has any jurisdiction or authority over the matter of furnishing, discontinuing or restoring telephone service to the public, nor in any other way, so far as I am aware; his or its approval or disapproval in that regard is meaningless insofar as any legal effect is concerned; they possess no more power in that respect than a stranger; each is utterly without such power whatever, however much the views and attitude of the commissioner or the department may by indirection be enforced, as, for example, by the arrangement or understanding between the police and the telephone company, to which reference has been made (see, *People* v. *Brophy, supra,* where a like arrangement existed and was held by the California appellate court to be unenforcible against the subscriber).

There is no authority vested in the Police Commissioner or in the police department to consider, pass upon, approve or disapprove requests for telephone service as an original application or for resumption of service after interruption or discontinuance or removal of equipment and facilities by or at the request of the police, or for any reason whatever (*People v. Brophy,* 49 Cal. App. 2d 15, *supra*), and hence there is no duty in that connection required *by law* of him or it to be performed and therefore no order of mandamus can issue against him or it. For the reasons stated the petition and proceeding are, as to him, dismissed, without costs.

In the situation. disclosed the company's refusal to restore service was unwarranted and as has been said constitutes no defense to this proceeding; the order of mandamus should accordingly be granted as against it unless some adequate cause appears to justify its refusal.

As hereinbefore mentioned the telephone company cannot be forced to furnish service and facilities to persons for the purpose of using them for an illegal end. The premise is. advanced that such cause exists here in that the petitioner by placing the mentioned wagers over his residence telephone uses and employs it as a conduit for enabling the crime of bookmaking to be committed; that this is sufficient and adequate reason of itself and justifies the company in refusing to restore any further telephone service.

A similar contention was made and rejected in the *Brophy* case (*supra*, p. 33), the court saying: " Respondent's claim that the furnishing of racing news to bookmaking establishments by telephone constitutes an aiding and abetting in a violation of section 337a of the Penal Code is without merit. It is not the transmission by use of a telephone of information concerning the results or probable results of horse races that constitutes a violation of the quoted Penal Code section, but it is the use which persons may make of such information in the acceptance of bets or maintaining places for the reception of bets that constitutes a violation of the law. Neither the telephone company nor appellant in his capacity of a subscriber for telephone service was accused in the injunction suit of managing, operating or participating in any gambling place or enterprise maintained for the acceptance of wagers on horse races or other contests of skill between men or beasts; and the most that can be said of the charges made against the telephone company and appellant is that the telephone company placed in the hands of appellant the means of furnishing information to others locally and at distant points, which information might be used by such persons to contravene the provisions of section 337a of the Penal Code."

I see no force to this claim. At common law book-making was not a crime, and while it is true that book-making is now made a crime by statute (Penal Law, § 986), it is only against the professional gambler that the statute is directed and not against the bettor (*People ex rel. Collins* v. *McLaughlin*, 60 Misc. 306, 128 App. Div. 599, appeal dismissed 194 N. Y. 556; see, also, *Bamman* v. *Erickson*, 288 N. Y. 133); the statute does not prohibit ordinary betting, even if repeated from day to day, nor is it book-making to make a series of bets in the ordinary way (*People* v. *Laude*, 81 Misc. 256); for that reason the police attempted to level a charge against the petitioner of book-making.

The fact that the receiver of a telephone message lawfully transmitted may elect to utilize it for an improper or illegal purpose does not thereby render the original lawful use of the telephone improper or illegal and hence cannot be made a basis by the telephone company for refusing to furnish service to the subscriber. As said in *People* v. *Brophy* (*supra*, pp. 30–31): " The law is clear and decisive on the question of the enforceability of a contract even though one of the parties thereto has knowledge of an intended purpose of the other party, by means of the contract, or the performance thereof, to violate

some law or public policy of the state. The rule in that regard is thus stated in 53 A.L.R. 1364 at page 1366: ' The rule, according to the great weight of authority, is to the effect that a contract legal in itself is not rendered unenforceable by the mere fact that one of the parties thereto has knowledge of an intended purpose of the other party thereto, by means of the contract or subject matter thereof, to violate some law or the public policy of some state, or, as is stated in 6 R.C.L. p. 696, ' where there is no moral turpitude in the making or in the performing of the contract, the mere fact that an agreement the consideration and performance of which are lawful incidentally assists one in evading a law or public policy, is no bar to its enforcement, and that, if the contract has been performed by the promisee, it is no defense that the promisor knew that the agreement or its performance might aid the promisee to violate the law or to defy the public policy of the state, when the promisor neither combined nor conspired with the promisee to accomplish that result, nor shared in the benefits of such a violation.' "

There is the further point made by the company that it should not be required to assume the burden of deciding whether or not it should comply with the request of the police department in the mentioned instances, but that it ought to be considered as sufficient cause when it accepts the views of the police in that connection; it merits but scant consideration. I do not see that it should be put on a plane different from that of any person who is confronted with a problem; it must solve it as best it can; the safer course to pursue in such cases is, of course, to seek legal advice; presumably the company's law department is composed of competent and experienced lawyers. In this connection it is apropos to quote the following from the *Brophy* case (*supra,* p. 33) : " Public utilities and common carriers are not the censors of public or private morals, nor are they authorized or required to investigate or regulate the public or private conduct of those who seek service at their hands. Simply because persons who received information transmitted over the telephone facilities were enabled as a result of such information, if they were so inclined, to commit unlawful acts, does not make the telephone company a violator of the criminal laws. If such were the case, the telephone company would likewise be guilty in permitting its facilities to be used in transmitting information to the newspapers of the country as to prospective horse races or prize fights, because the information thus transmitted and published induced or enabled persons to engage unlawfully in betting on the results of such contests."

(See, also, *Pa. Publications, Inc., Aplnt.,* v. *P. U. C. et al.,* 349 Pa. 184.)

In the first and final analysis an application of this kind must be considered and determined upon the particular facts and circumstances presented. After due consideration and reflection it is the considered judgment of the court that the petitioner is entitled to a final order in the nature of mandamus directing the restoration of telephone service at his residence as existed heretofore.

Exception to petitioner to the dismissal of the petition and proceeding as against the defendant Police Commissioner; exception to defendant telephone company to denial of motion to dismiss. No costs. Settle findings of fact and final order.