## HAGERTY v. SOUTHERN BELL TELEPHONE & TELEGRAPH CO.

### No. 1081—M.

District Court, S. D. Florida, Miami Division.

Feb. 5, 1945.

G. A. Worley and Jack Kehoe, both of Miami, Fla., for plaintiff.

L. S. Julian (of Shutts, Bowen, Simmons, Prevatt & Julian) and Loftin, Anderson, Scott, McCarthy & Preston, all of Miami, Fla., and Scott M. Loftin and Harold B. Wahl, both of Jacksonville, Fla., for defendant.

HOLLAND, District Judge.

### Findings of Fact

1. This proceeding is of a civil nature between the plaintiff, a resident citizen of the State of Florida and within this judicial district, and the defendant, a corporation organized and existing under and by virtue of the laws of the State of New York. The amount in controversy, exclusive of interest and costs, is in excess of the sum of $3,000.

2. At least up to January 2, 1945, when horse racing in the United States was discontinued at the behest of the United States Government, plaintiff was engaged in the business of what is commonly known as a disseminator of race horse information or information concerning races participated in by horses, and the results of said races.

3. At least up to January 2, 1945, plaintiff disseminated information concerning odds prevailing at tracks on horses in races and the pari-mutuel betting thereon at the race track where said race or races were being held or conducted.

4. Plaintiff used the telephone facilities involved in this suit for such dissemination.

5. At least up to January 2, 1945, plaintiff had certain customers in the State of Florida who paid the plaintiff certain sums of money for the information thus furnished by plaintiff.

6. Plaintiff's customers aforesaid were numerous.

7. As a part of the service rendered by plaintiff to said customers he rendered current and daily service to said customers by giving last minute news or information concerning said horse races, the changing odds prevailing at the said race tracks where said races were being run, and the results of said races.

8. At least up to January 2, 1945, the great majority of the customers of plaintiff's business were what are commonly known as bookmakers, i.e., those who receive and place bets on the result of said races.

9. At least up until January 2, 1945, plaintiff, by means of telephone, also made known to his subscribers or customers, some of whom operate poolrooms, bars, saloons, restaurants, gambling houses, and other places outside the enclosure of a licensed race track, information pertaining to races, race tracks, race horses, betting and betting odds, form charts, and other information relative or incidental thereto.

10. The information so furnished and conveyed over the lines or equipment of the defendant from the place of business of the plaintiff by means of said telephone and said telephone equipment was necessary and essential to the operations of bookmakers.

11. The operations of said bookmakers were in violation of the laws of the State of Florida.

12. Any cessation of plaintiff's activities since about January 3, 1945, as outlined above, was due to the action of the United States Government in putting a temporary stop to horse racing and the fact that the United States Government does not permit the transmittal over telephone or telegraph wires of news concerning horse racing events from foreign countries, as alleged in paragraph IV of plaintiff's bill of complaint.

13. On or about January 12, 1945, defendant received a letter from the Honorable Stanley Milledge as State Attorney for the Eleventh Judicial Circuit of Florida, addressed to it, dated January 11th, 1945, set up in full in paragraph III of defendant's answer herein, and demanding that the defendant discontinue all telephone service being rendered by it at the location involved in this suit, i.e., 532–534–536 N. W. 4th Avenue, Miami, Florida, and stating that the continued furnishing of such services would be at the defendant's peril and responsibility for aiding in the violation of the laws of Florida.

14. At the address involved in this suit, 532–534–536 N.W. 4th Avenue, Miami, Florida, there were at the time of institution of this suit, and are now, twelve telephones, four of which were contracted for by plaintiff; the remaining eight telephones were contracted for by third parties at other addresses and then removed under their names to the location involved in this suit. Plaintiff has no contractual right or any right cognizable in a court of equity to said eight telephones, and defendant only contracted to furnish plaintiff the four remaining telephones so long as plaintiff made no improper or illegal use thereof.

15. In response to said demand from said State Attorney referred to in the preceding paragraph and set up in full in paragraph III of defendant's answer herein, defendant sent notice to all of the patrons who had contracted for the service at said location, said notice being identical with notice sent to plaintiff and quoted verbatim by plaintiff in paragraph III of his complaint.

16. The exhibits attached to and made a part of paragraph IX of defendant's answer as exhibit "A" are true and correct copies of pleadings in the case of Walter M. Hagerty v. Southern Bell Telephone and Telegraph Company, case No. 44507—E in the Circuit Court of Duval County, Florida.[1]

17. The exhibit attached to and made a part of paragraph IX of defendant's answer is a true and correct copy of utilities order "U–2" as amended December 19,

---

[1] See 145 Fla. 51, 199 So. 570; 147 Fla. 791, 3 So.2d 889.

1944, entitled "General Conservation Order for Telephone Industry", issued on December 19, 1944, under the laws of the United States, by the War Production Board and published in the Federal Register on December 20, 1944, under which defendant is required to disconnect service when it learns that the present real user of service is not a user contemplated in the service agreement. Plaintiff is the real user of all the 12 telephones involved in this suit and he is not the user contemplated in the service agreement for 8 of said telephones as above set forth.

18. Defendant has probable cause to believe that its telephone facilities at least up to January 2, 1945, were being used in violation of the laws of the State of Florida, or to give furtherance to, or aid and assistance to, violation of the laws of Florida.

19. On or about January 3, 1945, horse racing meets in the United States were discontinued at the request of the United States Government, and on or about January 4, 1945, the Federal Communications Commission and the Board of War Communications of the United States Government called upon the telephone and telegraph industries to reclaim their facilities employed exclusively or principally in the dissemination of racing information.

### Conclusions of Law.

1. This court has jurisdiction of the parties and subject matter of this action.

2. Plaintiff can not invoke processes of a court of equity to prevent the discontinuance of telephone service which is to be used by plaintiff in gambling enterprises or to encourage or promote gambling enterprises.

3. The bookmaking establishments serviced by plaintiff are violative of the laws of the State of Florida (see F.S.A. §§ 849.01, 849.03, 849.09, 849.14, and 550.16). At least up until January 2, 1945, plaintiff used the telephone facilities of defendant for the purpose of furnishing information facilitating the conducting of bookmaking establishments operating in violation of the laws of the State of Florida.

4. Any cessation of plaintiff's activities since January 2, 1945, has been for reasons beyond his control, i.e., the activities of the United States Government in stopping horse racing in this country and forbidding the dissemination of horse race information from foreign countries over telephone and telegraph facilities in this country. The language of plaintiff's own bill indicates that his activities will be resumed if and when it is within his power so to do.

5. Temporary cessation or voluntary discontinuance of an alleged illegal activity does not operate to remove a cause from the ambit of judicial power. Accordingly, since a court of equity would not act to aid plaintiff when he was actively engaged in his horse race information disseminating business, a court of equity will not act to prevent the telephone service from being taken from him merely because he is temporarily prevented by acts beyond his control, i. e., activities of the United States Government, from pursuing his horse race information disseminating business.

6. Plaintiff can not invoke the processes of a court of equity to require the defendant to continue to furnish its facilities for present or prospective use by plaintiff in dissemination of horse racing information when defendant has probable cause to believe such use results in violation of the laws of Florida.

7. The aid of a court of equity, to prevent the discontinuance of telephone service which is being used to facilitate bookmaking, or prospectively will be used to facilitate bookmaking in violation of the law, or in promotion of any other gambling scheme or device, may not be invoked.

8. Utilities Order U–2 issued on December 19, 1944, by the War Production Board and published in the Federal Register on December 20, 1944 (9 F.R. 14537), is a valid order binding on both the plaintiff and defendant, and under it defendant is required to disconnect service when it learns that the present real user of the service is not a user contemplated in the service agreement. Under this order, in addition to other considerations, the defendant is required to disconnect the eight telephones used by plaintiff which were not contracted for by him.

9. Defendant is justified in disconnecting all of plaintiff's telephone service involved in this suit.

10. Plaintiff is not entitled to a temporary or permanent injunction or any other kind of relief, and said temporary injunction heretofore issued herein was wrongfully sued out.

11. The temporary restraining order heretofore issued in this cause should be dissolved.

12. All relief asked by plaintiff should be denied.

The above and foregoing findings of fact and conclusions of law are hereby ordered to be filed and made a part of the record in this cause.