## ANDREWS v. CHESAPEAKE & POTOMAC TELEPHONE CO. et al.
### Civil Action No. 1345-49.

United States District Court
District of Columbia.
May 9, 1949.

Charles E. Ford, of Washington, D. C., for plaintiff, for the motion.

Edmund L. Jones, of Washington, D. C., for defendant Chesapeake & Potomac Telephone Co., and

Samuel K. Abrams, Asst. U. S. Atty., of Washington, D. C., for defendant Fay, opposed.

HOLTZOFF, District Judge.

The plaintiff alleges in her complaint that she received a letter from the defendant telephone company to the effect that the company has been advised by the United States Attorney for the District of Columbia that his office is in possession of competent evidence that the plaintiff's telephone is being used in violation of the statutes prohibiting gambling in the District of Columbia and that the United States Attorney has requested the company to disconnect this telephone equipment and discontinue the telephone service. The letter further contains a statement that the telephone will be disconnected and telephone service discontinued on a date and at an hour specified in the letter. The plaintiff denies that

the telephone is being employed in violation of the statutes and claims that it is being used by her in her living and social activities. She seeks an injunction against the telephone company from discontinuing service and against the United States Attorney from advising, coercing, or in any manner aiding or assisting the telephone company in disconnecting the telephone equipment.

■ Naturally, it is of importance that the gambling statutes, and criminal statutes generally, be stringently enforced. It is of greater importance, however, that this enforcement be conducted in accordance with the requirements of the Constitution and laws of the United States. It not infrequently happens that a person seeking the protection of the Constitution and laws, is himself a person of bad character, but this circumstance does not diminish his constitutional and legal rights. This is one of the fundamentals of our system of government and one of the basic principles of the Bill of Rights.

■ A public utility, such as a common carrier, a telegraph company, or a telephone company, must serve all members of the public without discrimination or distinction. In this respect, public utilities are different from other businesses, such as stores, restaurants, and theaters, which may select their customers. The fact that a person may be of bad character does not deprive him of the right to receive service from a public utility. On the other hand, the facilities of a public utility may not be used for criminal purposes. A public utility has not only a right but a duty to refuse to render service for criminal purposes. For example, a railroad company may not refuse to carry a passenger merely because he has a criminal record or is engaged in an illegal or immoral business. If, however, the transportation is sought for the very purpose of committing and consummating an illegal act, transportation may and should be refused. Thus, if a person intending to commit a robbery at a distant point gets on a train for the purpose of reaching that place, and information of this fact is in possession of the railroad company, the passenger may be put off the train. On the other hand, he may not be put off the train merely because he is an immoral person or is engaged generally in illegal activities.

■ It clearly follows, therefore, that a telephone company may refuse to furnish or may discontinue service that has been furnished if the service is used for a criminal purpose, such as violation of the gambling statutes. The burden of proof, however, is on the public utility to establish the fact that the service is being used or is about to be used for a criminal purpose. Naturally, since this is a civil matter, such fact need not be established beyond a reasonable doubt. It is sufficient if it is shown by a fair preponderance of the evidence.

■ A public utility erroneously refusing service to a person entitled to it is subject to an action for damages. An action for damages may be inadequate, however, and, hence, equitable relief may be proper. On the other hand, equitable relief is administered on equitable principles, and any person seeking it must come into court with clean hands. An application for equitable relief, such as an injunction, is addressed to the discretion of the Court. It seems to the Court, therefore, that before telephone service may be discontinued on the ground that it is being used for an illegal purpose, the fact of the illegal use must appear by a preponderance of the evidence. True, there is a provision in the tariff of the telephone company to the effect that telephone service may be discontinued and need not be furnished "if any law enforcement agency, acting within its jurisdiction, advises that such service is being used or will be used in violation of law * * *." Obviously, if this provision of the tariff is to be literally construed, it is not valid. A public utility may not deprive a member of the public of his rights to service merely because it receives a notice from a law enforcement agency that he is using the service for illegal purposes. A public utility may refuse, and, in fact, must refuse, service if to its knowledge the service is being used for illegal purposes. This fact must, however, be established. To confer what would amount to judicial power on a law enforcement officer and to exercise such power ex parte would be violative of due process of law and would deprive members

of the public of their legal rights. A public utility may not do this, and neither may a regulatory administrative body.

It is the understanding of the Court, however, that counsel for the telephone company, recognizing all of these implications, quite candidly admits that this provision is not to be taken literally. The Court holds that this stipulation does not detract from the rule of law that service may be refused by a public utility to a member of the public, if the service is to be used for an illegal purpose, provided such use is established by a preponderance of the evidence.

■ In so far as concerns the letter written by the United States Attorney to the telephone company, naturally any person whosoever, be he a public officer or a member of the public, has a right to send a letter to anyone he chooses. Consequently, the Court will not enjoin the United States Attorney from writing any letter or from taking any steps that he deems wise for the purpose of properly performing his duty. Ordinarily, the courts do not enjoin prosecuting officers of the Government from taking steps to fulfill their official obligations.

The effect of the letter from the United States Attorney is another matter. Its function, as the Court sees it, is none other than merely to convey information to the telephone company and place the telephone company on notice of what the United States Attorney believes the situation to be. The telephone company, for example, may have a right, if it sees fit to do so, to request the United States Attorney to disclose whatever evidence he has in support of the information contained in the notice. The telephone company must make its own decision whether the evidence is sufficient to justify discontinuance of the service. The company acts at its peril. The Court is not unmindful of the fact that the company is subject to an action for damages if it wrongfully discontinues telephone service.

The Court has stated these general principles in order to clarify the issues as it sees them as a guidance for future proceedings in this matter.

The Court will deny any injunction against the United States Attorney, as prayed for in the complaint.

■ The Court will postpone decision on the application for injunction against the telephone company until full consideration is given to the evidence, indicating whether the telephone is or is not being used for an illegal purpose. The Court prefers, if possible, to determine this matter on affidavits. The United States Attorney at this hearing has submitted affidavits tending to show that the telephone is being used for an illegal purpose. Time will be given to the plaintiff to file affidavits in opposition, if she desires to do so. In addition, the telephone company will likewise have the privilege of filing affidavits.