81 So.2d 254

## May PIKE

v.

## SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY.

6 Div. 470.

Supreme Court of Alabama.

March 24, 1955.

Rehearing Denied May 19, 1955.

Further Rehearing Denied June 23, 1955.

Gibson, Hewitt & Gibson, Birmingham, for appellant.

Copeland & Copeland, Gadsden, Jas. H. Willis, Birmingham, amici curiae.

MAYFIELD, Justice.

A statement of this case appears in the dissenting opinion. The primary question here for consideration is whether or not the appellee Telephone Company was justified in removing the appellant's telephone. The appellee's asserted justification of this act was that it had received notification from Eugene "Bull" Connor, Commissioner of Public Safety of the City of Birmingham, that this telephone was being used for "illegal purposes".

It is clear that the Telephone Company, like any other public utility, which is granted a monopoly, has a duty to serve the general public impartially, and without arbitrary discrimination. This right of service extends to every individual who

Edw. W. Smith and John A. Boykin, Jr., Atlanta, Ga., and Lange, Simpson, Robinson & Somerville, Birmingham, for appellee.

complies with the reasonable rules of the Company. The subscriber is entitled to equal service and equal facilities, under equal conditions. 86 C.J.S., Tel. & Tel., Radio & Television, § 71, p. 83; City of Birmingham v. Southern Bell Telephone & Telegraph Co., 234 Ala. 526, 176 So. 301.

It is equally clear that the Telephone Company may properly refuse to furnish its service for a purpose or business which is patently illegal or a public nuisance. But, mere suspicion that such service is desired for purposes contrary to the public interest will not justify refusal. 86 C.J.S., Tel. & Tel., Radio & Television, § 65, p. 80; Western Union Telegraph Company v. Ferguson, 57 Ind. 495.

In Andrews v. Chesapeake & Potomac Telephone Co., D.C., 83 F.Supp. 966, 968, 969, the defendant Telephone Company received a letter from the United States Attorney stating that the plaintiff (subscriber) was using his telephone in violation of the gambling statutes and requested that the telephone be discontinued. When the Telephone Company complied with the request of the United States Attorney, the subscriber brought a petition for injunctive relief. There the court said:

"A public utility, such as a common carrier, a telegraph company, or a telephone company, must serve all members of the public without discrimination or distinction. * * * that a person may be of bad character does not deprive him of the right to receive service from a public utility. * * *

"* * * a telephone company may refuse to furnish or may discontinue service that has been furnished if the service is used for a criminal purpose, such as violation of the gambling statutes. The burden of proof, however, is on the public utility to establish the fact that the service is being used or is about to be used for a criminal purpose. * * *"

In the above cause, the tariff of the Telephone Company contained a provision that service could be discontinued if any law enforcement agency advised that it was being used, or will be used, in violation of law. Speaking of this tariff provision and the letter of the United States Attorney, the court said:

"* * * Obviously, if this provision of the tariff is to be literally construed, it is not valid. A public utility may not deprive a member of the public of his rights to service merely because it receives a notice from a law enforcement agency that he is using the service for illegal purposes. A public utility may refuse, and, in fact, must refuse, service if to its knowledge the service is being used for illegal purposes. This fact must, however, be established. To confer what would amount to judicial power on a law enforcement officer and to exercise such power ex parte would be violative of due process of law and would deprive members of the public of their legal rights. * * *

* * * * * *

"The effect of the letter from the United States Attorney is another matter. Its function, as the Court sees it, is none other than merely to convey information to the telephone company and place the telephone company on notice of what the United States Attorney believes the situation to be. The telephone company, for example, may have a right, if it sees fit to do so, to request the United States Attorney to disclose whatever evidence he has in support of the information contained in the notice. The telephone company must make its own decision whether the evidence is sufficient to justify discontinuance of the service. The company acts at its peril. * * *"

In the instant case, as far as the record reveals, there was not even a "tariff" of the telephone company to justify their discontinuance of this appellant's telephone service. We do not think this point controlling, however, and agree with the reasoning of the above case that the Telephone Company could not have adopted a

valid tariff in this particular. Such a "tariff" would have been a denial of due process of law.

In that portion of the opinion in People v. Brophy, 49 Cal.App.2d 15, 29, 30, 120 P.2d 946, 954; dealing with whether receipt by the Telephone Company of a letter from the State Attorney General stating that Brophy was using his telephone in bookmaking and requesting its removal would constitute a defense in a suit by Brophy against the Telephone Company for removal of the telephone, the court said:

"It is evident * * * that the law vests no authority in the office of the Attorney General to order a telephone company to discontinue its service, and this being true, the telephone company was not bound to abide by the order of the Attorney General, as was done in the circumstances disclosed by the record herein.

* * * * * *

" * * * the so-called affirmative defense was invalid and therefore raised no issues. In both substance and effect *it amounted to no more than a recital of certain information that respondent telephone company had received, and the source thereof added nothing to its value as a defense."* [Emphasis supplied.]

In Giordullo v. Cincinnati & Suburban Bell Telephone Co., Ohio Com.Pl., 71 N. E.2d 858, 859, 860, the plaintiff brought an action to recover damages for the withdrawal of telephone service from the plaintiff's premises and to compel defendant to restore plaintiff's service. In its answer the telephone company alleged that the Chief of Police had requested that plaintiff's telephone be removed claiming that he was using his telephone for bookmaking. On demurrer by plaintiff, the court said:

"The telephone company required the plaintiff to get the OK of the Chief of Police before it would give plaintiff telephone service and withdrew the same upon the request of the Chief of Police, all without any hearing as to the gambling charges—*that is police government pure and simple.* [Emphasis supplied.]

"The court agrees with counsel too that such a hook-up between the Telephone Company and the Chief of Police is in utter disregard of the fundamental rights of the citizenry of this city; but the court must disregard the alleged hook-up in passing upon plaintiff's demurrer except to say that the Telephone Company can not excuse its actions in withdrawing plaintiff's telephone service on the claim that it did so upon the request of the Chief of Police.

* * * * * *

"If that is true (that plaintiff was using the telephone for bookmaking) it seems to the court that the defendant had the right to withdraw plaintiff's telephone service. When it comes to the trial of this case *the Telephone Company will be required to prove that defense by preponderance of the evidence and the letter of the Chief of Police requesting defendant to withdraw plaintiff's telephone service will not even be proper evidence in the case."* [Emphasis supplied.]

In Shillitani v. Valentine, 184 Misc. 77, 53 N.Y.S.2d 127, 131, 132, the petitioner sought a writ of mandamus to compel the restoration of telephone service. Petitioner's telephone had been removed by the police at the time of his arrest for bookmaking. On his acquittal of the charge, petitioner applied to the telephone company to have telephone service restored. The police department did not approve the restoration of his telephone and for that reason the company refused to restore it.

The holding of the court in granting the writ was, in part, as follows:

" * * * a telephone company may not refuse to furnish service and facilities because of mere suspicion or mere belief that they may be or are being used for an illegitimate end;

more is required (People v. Brophy, 49 Cal.App.2d 15, 120 P.2d 946, supra; Western Union Tel. Co. v. Ferguson, 57 Ind. 495); nor because the character of the applicant is not above reproach, nor because such person is engaged in immoral or illegal pursuits, where they have no connection with the service applied for. Godwin case, supra. [Godwin v. Carolina Tel. & Tel. Co., 136 N.C. 258, 48 S.E. 636, 67 L.R.A. 251, 103 Am.St.Rep. 941, 1 Ann. Cas. 203.] * * *

* * * * * *

"Neither the police commissioner nor the police department has any jurisdiction or authority over the matter of furnishing, discontinuing or restoring telephone service to the public, nor in any other way, so far as I am aware; his or its approval or disapproval in that regard are meaningless insofar as any legal effect is concerned; they possess no more power in that respect than a stranger; each is utterly without such power whatever, however much the views and attitude of the commissioner or the department may by indirection be enforced, as, for example, by the arrangement or understanding between the police and the telephone company, * * *."

The appellate division modified the order of the trial court so as to direct a dismissal of the petition upon a finding that the petitioner was, in fact, using his telephone for criminal activities. 269 App.Div. 568, 56 N.Y.S.2d 210. On appeal to the Court of Appeals, the holding of the appellate division was affirmed, 296 N.Y. 161, 71 N.E.2d 450, 451. The court said in part:

"Since the record justifies the conclusion that petitioner was engaged in conduct violative of section 986 of the Penal Law, it follows that he failed to establish * * * a clear legal right to the relief sought. Under the circumstances of this case, there was no warrant for compelling the telephone company to reinstate its service for petitioner.

* * * * * *

"Neither the Police Commissioner nor the Police Department is given any authority by statute to pass upon or regulate applications for telephone service, or to require a.telephone company to withhold or discontinue its service. * * *

"Whether or no service should be terminated or discontinued is a decision that must be made by the telephone company. That power—as well as duty—rests with the public utility, and it may not delegate the one or avoid the other. True, the company is free to consult with the Police Department or with any other law enforcement agency, and may be guided in its action by the advice received. But whether the action is justified or warranted must be determined by the telephone company upon the facts presented. * * *"

Shillitani v. Valentine, supra, was followed in Whyte v. New York Telephone Co., Sup., 73 N.Y.S.2d 138, and in Dees Cigarette & Automatic Music Co., Inc., v. New York Telephone Co., 184 Misc. 269, 53 N.Y.S. 651, wherein the respondent Telephone Company was ordered to reinstall petitioners' telephones. In both cases, the Company had refused service on the request of the police department. We are aware that the courts of several jurisdictions have taken a contrary view; nevertheless, we are convinced that the rule enunciated in the foregoing cases is sound and should be followed by the courts of Alabama. The cases supporting the contrary view are ably collected in the dissenting opinion and require no further comment.

Upon its factual situation, the instant case is even weaker than the cases which we have heretofore reviewed. A contrary holding would be particularly disturbing when we consider the questions which are left unanswered by the Company's plea. This plea does not even allege that the appellant's telephone was, in fact, being used in a manner which would justify its removal. The allegation is merely that the appellee received notice from Eugene

"Bull" Connor, Commissioner of Public Safety, and was thereby ordered to remove the telephone. The letter from Commissioner Connor, which the company claims clothes them with immunity, merely states that the telephone is being used for "illegal purposes."

Attached to the letter to the Company from the Commissioner was a list which included remarks concerning one Louis Pike—presumably the husband of appellant. It was stated that Louis Pike "is a well-known lottery operator in the city." As was stated in the foregoing cases, the questionable character of the telephone subscriber is not justification for a Company, which holds a monopoly, to discontinue the service. Obviously, this principle is doubly applicable where both the character and the occupation of the person assailed is someone other than the subscriber.

"Criminal" and "illegal" are not interchangeable terms. While it is argued by the appellee that the "illegal" use referred to concerned bookmaking operations, such does not appear in the notice received by the Telephone Company. Stripped to its bare essentials, Commissioner Connor's letter makes two allegations against Louis Pike. First, that he "operates a negro beer joint". Regardless of whether such activity be laudable, it is not criminal or even "illegal". Secondly, that Pike operates the Joe Louis Lottery House and has at least three cases pending in the various courts. The "pendency" of a criminal case cannot be used as a predicate for punitive action under the American system. The present tendency and drift towards the Police State gives all free Americans pause. The unconstitutional and extra-judicial enlargement of coercive governmental power is a frightening and cancerous growth on our body politic. Once we assumed as axiomatic that a citizen was presumed innocent until proved guilty. The tendency of governments to shift the burden of proof to citizens to prove their innocence is indefensible and intolerable.

We are not able to glean from the bare conclusions set up in the letter of the Commissioner, whether it is claimed that the "illegal" use of the telephone was by the appellant, her husband, or a total stranger. From aught that was alleged in the plea, except for the conclusion of the Commissioner, no "illegal" use of any type was made of this telephone by any one.

The notice alleged to have been received by the Telephone Company was couched in the terms of a direct order from the Commissioner of Public Safety. What is the source of Mr. Connor's authority to issue such an order? We know of none. And we hold that none exists.

If we took a contrary view, it would naturally flow and follow that the telephone company would be justified in acting on the notice of any over-zealous law enforcement official who, without evidence, and on mere suspicion, is impressed with the bad character or occupation of a particular telephone subscriber. The letter from Commissioner Connor set up in the plea is no defense. It is the Telephone Company's burden to show that the use being made of the telephone did, in fact, justify its removal.

These depredations of a subscriber's legal right to telephone service constitute a denial of due process guaranteed by the Constitution of 1901, art. 1, § 6. The gratuitous and arbitrary action of a police official is no justification for an abridgement of this right. To hold that the Telephone Company is justified in discontinuing service by "order" of a police official would require judicial recognition of a police power which does not exist. The bald assertion of an executive officer, be he the Attorney General of the United States or a constable of some remote beat, cannot be accepted as a substitute for proof in the judicial process. No presumption arises as to the sufficiency of evidence based on a law enforcement officer's conclusions.

Appellee's plea No. 2 alleged no defense to the cause of action and the nisi prius court erred in overruling the challenging demurrer.

Reversed and remanded.

SIMPSON and STAKELY, JJ., concur.

LAWSON, J., concurs in the result.

LIVINGSTON, C. J., and GOODWYN and Merrill, JJ., dissent.

GOODWYN, Justice (dissenting).

Appellant, plaintiff below, brought action at law against appellee claiming damages for cutting off or discontinuing her telephone service. As last amended, the complaint consisted of three counts. Count 1 charged appellee with "negligently" cutting off telephone service; count 2, with "wantonly" cutting off such service; and count 3, with "willfully, wantonly, maliciously, intentionally, and wrongfully" cutting off such service. Appellee's demurrer to the complaint, as last amended, was overruled. Thereupon appellee entered two pleas. The first was a plea of the general issue. Plea 2 was as follows:

"Plea 2. On April 6, 1951, the defendant was engaged in business in the City of Birmingham, Alabama, as a public utility furnishing intrastate and interstate telephone service to the public.

"Prior to April 6, 1951, a telephone with call number 6–9171 was installed by defendant in a place of business at 1535 Twentieth Street, Ensley, being operated by plaintiff or plaintiff and her husband, and said telephone was therein on April 6, 1951, and was the only telephone in said premises either on April 2nd, 1951, or April 6, 1951.

"Defendant further avers that it received a letter dated April 2, 1951, from the Commissioner of Public Safety of the City of Birmingham, Alabama, who was at the time the responsible law-enforcing agent of said City, and who was in charge of its Police Department, advising the defendant that the said telephone facilities furnished by the defendant at the said premises known as 1535 Twentieth Street, Ensley, a place within the corporate limits of the said City and subject to its police jurisdiction, were being used for illegal purposes, and directing the defendant to remove said telephone facilities. Said letter was in words and figures as follows:

" 'April 2, 1951

" 'Mr. C. L. Lott, District Manager,

" 'Southern Bell Telephone & Telegraph Company,

" 'Birmingham 3, Alabama

" 'Dear Mr. Lott:

" 'This is your order to remove the attached list of telephones which are used for illegal purposes. These telephones are not to be reconnected without a Court order or advice from me.

" 'Sincerely yours,

" '/s/ Eugene "Bull" Connor
     Commissioner of Public Safety.'

"Attached to said letter was the list of telephones referred to therein, which, in the part thereof here pertinent said:

" 'Lewis Pike, white, male, lives at 1117 Thirteenth Avenue, South, and has telephone listed 4–3075 and 4–1420. Lewis Pike also operates a negro beer joint at 1535–20th St. Ensley—Telephone 6–9171. He is a well-known lottery operator in the City, operating the Joe Louis Lottery House and has at least three cases pending in the various Courts.'

"The defendant avers that, acting in compliance with the order contained in said letter from the Commissioner of Public Safety of the said City, a communication was addressed to the plaintiff under date of April 5, 1951, by the defendant in words and figures as follows, to-wit:

" 'We have information which indicates that the telephone facilities and service being furnished you by this company have been used in connection with unlawful activities. Therefore, this is to notify you that on April 6, 1951, all telephone service at the present time being rendered to you at 1535–20th Street, Ensley, will be discontinued.

" '/s/ C. L. Lott
     'District Manager.'

"Said communication was delivered to the person in charge of said premises at or immediately preceding the time of the removal of said telephone facilities, and the defendant did, on April 6, 1951, remove said telephone facilities with call number 6–9171 from said premises, viz.: 1535 Twentieth Street, Ensley, in an orderly, lawful and proper manner and unless this be wrong, defendant was guilty of no wrong on the occasion complained of."

The appellant demurred to plea 2, assigning thirty-eight separate and several grounds. The demurrer being overruled, appellant moved for a non-suit, which was granted. This appeal presents for review the propriety of the action of the court in overruling the demurrer to plea 2.

As I see it, the question presented for decision is whether, under the facts averred in plea 2, appellee was justified in discontinuing appellant's telephone service. Specifically, the question is whether appellee, in removing appellant's telephone pursuant to the instructions from the Commissioner of Public Safety of the City of Birmingham, was justified in accepting the order of said Commissioner as reasonable cause to believe that the telephone was being used for an illegal purpose. Appellant's insistence is that appellee, as a public utility, must serve the public without discrimination and that she has been unjustly discriminated against by the discontinuance of her telephone service; that plea 2 does not show that either she or her husband personally used the telephone for illegal purposes nor that they had any notice or knowledge that it was being used for illegal purposes or that they permitted any one to use said telephone for illegal purposes. It is further contended that the discontinuance of service deprived her of her property without due process of law in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

The position taken by the Telephone Company is that the instructions from the Commissioner of Public Safety for removal of appellant's telephone because of its use, as stated in said instructions, for illegal purposes, constituted reasonable cause for the Company to believe the telephone was being illegally used, thus justifying its removal.

It does not appear that this question has heretofore been before this court. However, it has been dealt with in other jurisdictions, but not with unanimity in the decisions.

My research discloses that when the question has been considered in other jurisdictions, there has usually been involved the reasonableness of a statute, a rule of a state or federal regulatory body, or a rule of the public utility. It is apparent that our problem, as presented by the pleadings, is somewhat different. Here, no statute or rule is involved. The question, then, simply stated, is whether the Telephone Company, in the absence of a statute or rule on the subject, is justified in discontinuing service when requested to do so by a responsible law enforcement officer who represents to the Company that such service is being used for illegal purposes. (As I see it, the principle applicable here would likewise be applicable if a statute or rule were involved.) My view is that the Telephone Company is justified in relying on the representations of such law enforcement officer as to the illegal use of the service and, accordingly, should not be liable for damages when service is discontinued at the request of such officer.

It is generally held that a public utility, by reason of the very nature of its business, is obligated to furnish "its service or commodity to the general public, or that part of the public which it has undertaken to serve, without arbitrary discrimination." 73 C.J.S., Public Utilities, § 7 b, p. 999. But it cannot be required to furnish service for illegal purposes. 52 Am.Jur., Telegraphs and Telephones, § 93, p. 123; Nichols, Public Utility Service and Discrimination, Chap. VII, § 9, p. 196. As thus stated in 52 Am.Jur., Telegraphs and Telephones, Cum.Supp. § 84.1:

"It is the duty of a telephone company to furnish service and facilities

without discrimination in favor of or against anyone who will pay the applicable tariff rate and abide by the reasonable regulations of the utility. But a telephone company's duty to furnish service is limited to lawful service, and it cannot be compelled to furnish service for purposes which are illegal, * * *."

In the light of these principles, is it not a reasonable and practicable rule of law which says that a utility is justified in discontinuing service when a responsible law enforcement officer notifies the utility that such service is being used for illegal purposes and requests that the service be discontinued because of such illegal use? I think so; and this conclusion finds support in the following cases, among others: McBride v. Western Union Tel. Co., 9 Cir., 1948, 171 F.2d 1, 3, 4; King v. Seamon, Fla., 1952, 59 So.2d 859, 861; Dade County News Dealers Supply Co. v. Florida Railroad & Public Utilities Commission and Dade County News Dealers Supply Co. v. Southern Bell Tel. & Tel. Co., Fla., 1950, 48 So.2d 89, 90; Hagerty v. Southern Bell Telephone & Telegraph Co., 1940, 145 Fla. 51, 199 So. 570; Dente v. New York Telephone Co., Sup., 1944, Westchester County, 55 N.Y.S.2d 688, 690, 691, 692; Application of Manfredonio, 1944, Westchester County, 183 Misc. 770, 52 N.Y.S.2d 392, 393; People ex rel. Restmeyer v. New York Telephone Co., 1916, 173 App. Div. 132, 159 N.Y.S. 369, 370.

In the case of McBride v. Western Union Tel. Co., supra [171 F.2d 3], appellant sought to compel the telegraph company to restore wire service to him. The company based its refusal to restore service on Federal Communication's Tariff Regulation 219 (8) which provided as follows:

" 'Facilities furnished under this tariff shall not be used for any purpose or in any manner directly or indirectly in violation of any federal law or the laws of any of the states through which the circuits pass or the equipment is located, and the telegraph company reserves the right to discontinue the service to any drop or connection or to all drops and connections when it receives notice from federal or state law enforcing agencies that the service is being supplied contrary to law.' "

The court there said:

"The telegraph company was notified by the Attorney General for California in writing that such illegitimate use of the drops was being made in several cities in California and by the Sheriff of Kern County, California, that such use was being made in the city of Bakersfield, California. McBride does not complain that the places of such illegal misuse are not sufficiently described, but that the statement of the notices of illegal use are not substantiated. We do not agree that the notifying officers are required to supply to the telegraph company the probative facts to be adduced in court in the trial of the cases of violation stated in the notices.

"McBride's complaint contained two causes of action. We can see no essential difference between them. In both he states that the telegraph company should be 'required by order of the court to *continue* to supply plaintiff with such facilities.' (Emphasis supplied.) He contends, however, that his second cause of action requires the telegraph company to disregard the notices of the law enforcement officers because they concern a past wrongdoing and treat it as beginning de novo a litigation for the supplying of the telegraphic and drop services which the company refuses him.

"The effect of such a construction would make nugatory the provisions of Section 219(8). A new illegal use would follow to be stopped only long enough for the bringing of another such suit as here. The process of law violation would continue indefinitely with only minor stoppages by an impotent Attorney General. *The telegraph company may rely on the Attorney General's and the county sheriff's notices as sufficient to justify the*

*telegraph company's refusal to restore the services, which, as both complaints describe it, would be a continuing of past services."* (Emphasis supplied.)

In Hagerty v. Southern Bell Telephone & Telegraph Co., supra, the Attorney General of the United States advised the telephone company that Hagerty was using the company's facilities to promote lottery schemes in Florida and elsewhere and demanded that the service be discontinued on pain of being held to account for aiding and conspiring in the violation of the Federal anti-lottery laws. The Attorney General of Florida also advised the telephone company that Hagerty "was using its telephone facilities to aid in the maintenance of gambling houses or in the promotion of gambling" contrary to the laws of Florida, and requested that the service be discontinued. In response to these demands, the telephone company notified Hagerty that service would be discontinued. Hagerty thereupon filed his bill in equity and secured a temporary restraining order directed to the company prohibiting it from discontinuing the service. The company filed its answer interposing as a defense its right to discontinue service because of the alleged violation of state and federal laws and the demand made on it by the state and federal prosecuting officers. The trial court upheld the answer of the telephone company. On appeal, the Florida Supreme Court has this to say [145 Fla. 51, 199 So. 571]:

"Here we are concerned with the power of a court of equity to relieve a public service corporation from furnishing a service in the face of a threat of prosecution. * * * The law is well settled that the aid of a court of equity to prevent the discontinuance of telephone service which is being used to facilitate book making in violation of the law or in the promotion of any other gambling scheme or device will not be enforced. * * *

* * * * * *

"We therefore hold that the answer of the Telephone Company presents a good and legal defense to the bill of complaint * * *."

In the later Florida cases of Dade County News Dealers Supply Co. v. Florida Railroad & Public Utilities Commission and Dade County News Dealers Supply Co. v. Southern Bell Tel. & Tel. Co., supra, the Supreme Court of that state held that the telephone company was warranted in discontinuing service to the News Dealers Supply Co. when notified to do so by the Florida Attorney General because such service was being used for unlawful purposes. There under consideration was Rule 1592 of the Commission which became effective on April 1, 1950. Said rule contained the following:

"Whenever any such utility is notified in writing by any state or Federal law enforcement officer acting within his apparent jurisdiction, either directly or through this Commission, that certain telephone or telegraph facilities or any part thereof, are being used or have been used in violation of any Federal law or the laws of the State of Florida, then such utility shall disconnect and remove such facilities and discontinue all telephone and telegraph service rendered over said facilities."

Pursuant to this rule, the telephone company notified the News Dealers Supply Co. that the Attorney General of Florida had demanded that all facilities furnished by the telephone company to said Supply Company be discontinued, and that, therefore, all such services would be terminated. A bill was filed and a temporary restraining order was issued to prevent the telephone company from interfering with the telephone service then being furnished. On hearing in the trial court said restraining order was dissolved and the bill dismissed. On appeal, the Supreme Court of Florida said [48 So.2d 90]:

"The first point for consideration is whether or not appellee, Southern Bell Telephone and Telegraph Company was warranted in discontinuing its telegraph and telephone service to Dade County News Dealers Supply Company when notified to do so by the Attorney General on the ground that

it was being used for unlawful purposes.

"We think this question requires an affirmative answer. Chapter 364, Florida Statutes 1941, F.S.A., authorizes the Commission to regulate and control telephone and telegraph companies. Section 364.20 authorizes the Commission to adopt the rule under attack and provides that it shall be reasonable and just and such as ought to have been made in the premises. *The rule does no more than enact the law as it existed at the time* and there is not the slightest suggestion that the rule is arbitrary or unreasonable or in some other way may work an injustice on the appellant or its patrons. We think the following cases conclude the question: Hagerty v. Southern Bell Telephone & Telegraph Co., 145 Fla. 51, 199 So. 570; Tracy v. Southern Bell Telephone & Telegraph Co., D.C., 37 F.Supp. 829; Hagerty v. Southern Bell Telephone & Telegraph Co., D.C., 59 F.Supp. 107; McBride v. Western Union Telegraph Co., 9 Cir., 171 F.2d 1." [Emphasis supplied.]

The opinion in King v. Seamon, supra, discloses that Rule 1592, considered in the Dade County News Dealers Supply Co. Cases, supra, was subsequently enacted into law. In construing such enactment, the court cited with approval the construction of the rule as announced in the Dade County News Dealers Supply Co. Cases, supra.

In Application of Manfredonio, supra, the petitioner's telephone service was discontinued and the telephone removed by the telephone company, acting upon request of the Mt. Vernon Police Department which informed the telephone company that the telephone was being used by petitioner for gambling and bookmaking. Petitioner brought suit for restoration of telephone service. The court said:

"The first question is: Had the telephone company the right to act upon the request of the police department without an independent investigation of its own? The court holds that it

was the duty of the respondent to so act, otherwise it might well run the risk of becoming a party to criminal activities and also because sound public policy requires it in the first instance to aid the authorities in their efforts to enforce the law. The police department refuses to rescind its request and the respondent declines to restore the service without such rescission or by order of the court. In this stand the court holds that the telephone company is within its rights."

In the later case of Dente v. New York Telephone Co., supra [55 N.Y.S.2d 689], telephone service was discontinued by the telephone company "after it had received a letter from the Chief Inspector of the Mount Vernon Police Department, the purport of which was, that he had received information from the New York Police Department, with other information, which led him to believe that the telephone in question was being used for an unlawful purpose, to wit, bookmaking, and requested the respondent [telephone company] to forthwith discontinue the service, and not to reinstate the same without the approval of the Police Department." The court said:

"The service was thereupon discontinued, which was taken in accordance with the long established practice of the respondent, namely, to terminate a subscriber's service upon the request of the police, whenever the police claim it is being used allegedly to violate the law, and not to restore the same until the police officials had approved the restoration of the service. * * *

"The question here presented is, was the respondent justified in discontinuing the service upon a mere naked request of the police authorities, without any independent investigation of its own that there was reasonable grounds to believe that the telephone was being used for an unlawful purpose? In other words, was there legal right to refuse petitioner telephone service upon the mere action of the police department objecting to the furnishing of

such service, especially where the action of the police department may be arbitrary, unreasonable and discriminatory, and based on mere suspicion? Or does the telephone company have to wait until there has been either a conviction showing the unlawful use of the phone, or some court action on the part of the police authorities? Here, concededly none was taken.

\* \* \* \* \* \*

"The courts of this State have repeatedly given sanction to the basic proposition or rule that where the Police Department has objected to and disapproved of furnishing of telephone service on the ground that it is being used for an unlawful purpose, the telephone company has a legal right to refuse such service. \* \* \*

\* \* \* \* \* \*

"What steps must the telephone company take before discontinuing the service at the request of the Police Department? Must it conduct a separate and independent investigation of its own, for which concededly it has no facilities? Or is it justified in relying upon the representations of the law enforcing authorities that they have information that the phone is being used for unlawful purposes?

"It was conceded upon the argument that if the telephone company had knowledge of its own that one of its phones was being used for an unlawful purpose, then it would be its duty upon its own initiative to discontinue the same. Is the rule different when the company is informed by the law enforcing authorities that the phone is being so used? Does the law require that a telephone company shall at its peril determine the legality of an order of the Police Department directing a telephone service be not restored to premises in which the police have requested a removal of the service for alleged illegal use?

"I am mindful that the position of the respondent may frequently work hardship and injustice, and here the evidence obtained by the Police Department, that the law was being violated, is tenuous.

"Following the memorandum of Mr. Justice Davis of this Department, in Application of Manfredonio, 183 Misc. 770, 52 N.Y.S.2d 392, I hold that the telephone company was within its rights in discontinuing service upon the request of the Police Department without an independent investigation of its own. \* \* \*"

In People ex rel. Restmeyer v. New York Telephone Co., supra, the proceeding was to require the telephone company to furnish telephone service to the relator. The telephone company had removed the telephone from relator's saloon upon complaint of the police authorities that the premises and telephone were being used by the relator in conducting a pool room for receiving and registering bets on horse racing. On the question of whether service should be restored, the court said as follows [173 App.Div. 132, 159 N.Y.S. 370]:

"The affidavit of Officer Beine is quite circumstantial in describing the betting transactions carried on by the relator, and leaves no room for doubt that the relator was persistently violating the law against pool selling and using his telephone as an important factor in that illegal business. Beine is corroborated in every particular by Officer Canfield. In view of these facts the police were justified in regarding the relator's place as an unlawful resort, and their request to the telephone company to discontinue the telephone service therein was entirely proper and in the interest of law and order. It is certainly not an unlawful or oppressive use of police power to interrupt telephone service by arrangement between the police and the telephone company in a case where the telephone is being used, as it was in this case, to carry on a criminal business. Speaking generally, the telephone company is bound to furnish service to all who pay its proper charges and obey its reasonable regulations, but it is not required to fur-

nish such service to those who are reasonably sure to use it for an illegal purpose."

Although there is authority to the contrary, Andrews v. Chesapeake & Potomac Telephone Co., 1949, D.C.D.C., 83 F.Supp. 966, 968, 969; Giordullo v. Cincinnati & Suburban Bell Telephone Co., Ohio Com. Pl., 1946, 71 N.E.2d 858, 859; People v. Brophy, 1942, 49 Cal.App.2d 15, 120 P.2d 946; Whyte v. New York Telephone Co., Sup., 1947, New York County, 73 N.Y.S.2d 138, 139; Shillitani v. Valentine, 1945, New York County, 184 Misc. 77, 53 N.Y.S.2d 127, 130, 131, 132, 134. I am persuaded that the principle approved in the line of cases hereinbefore discussed is fair, reasonable and practicable and, being in aid of law enforcement, accords with sound public policy. Therefore, I respectfully dissent from the majority holding. It is to be noted that appellant is not without recourse to have her right to telephone service judicially heard and determined. Code 1940, Tit. 48, §§ 57, 63, 79.

LIVINGSTON, C. J., and MERRILL, J., concur in the foregoing opinion.

On Rehearing.

MAYFIELD, Justice.

Counsel for the appellee insist with great vigor that Section 6 of the Constitution of Alabama 1901 affords no protection against an abuse of "due process of law" except in criminal cases. In support of this position they cite the holding of the Supreme Court of Rhode Island in Sepe v. Daneker, 76 R.I. 160, 68 A.2d 101, and Taglianetti v. New England Tel. & Tel. Co., R.I., 1954, 103 A.2d 67, construing a provision of the Rhode Island Constitution similar to art. 1, § 6 of the Alabama Constitution of 1901. Regardless of what position the Supreme Court of Rhode Island may have taken in the interpretation of their own Constitution, the Supreme Court of Alabama has consistently and repeatedly required due process of law in civil, as well as criminal cases. In the civil case of Almon v. Morgan County, 245 Ala. 241, 246, 16 So.2d 511, 515, it was said:

"Procedural due process, broadly speaking, contemplates the rudimentary requirements of fair play, whether in a court or an administrative authority, which include a fair and open hearing before a legally constituted court or other authority, with notice and opportunity to present evidence and argument; representation by counsel, if desired; and information as to the claims of the opposing party, with reasonable opportunity to controvert them. Garrett v. Reid, 244 Ala. 254, 13 So.2d 97; Shields v. Utah Idaho Cent. R. Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111; Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129; 42 Amer.Jur. 479; Frahn v. Greyling Realization Corp., 239 Ala. 580, 195 So. 758."

In State ex rel. Steele v. Board of Education of Fairfield, 252 Ala. 254, 260, 40 So.2d 689, 695, which was a petition for mandamus, this court, in speaking of an administrative hearing, said:

"While no particular form of procedure is prescribed for such hearings, due process must be observed. Such is the rule generally as to hearings provided for by statute before administrative agencies. (Citing cases.) * * *"

In the case of Zeigler v. South & North Ala. R. R. Company, 58 Ala. 594, 598, 599, Justice Stone said:

"'Due process of law undoubtedly means, in the due course of legal proceedings, according to those rules and forms which have been established for the protection of private rights * * *. They were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice.'—Cooley Cons.Lim. 355.

"Due process of law implies the right of the person affected thereby to be present before the tribunal which pronounces judgment upon the question of life, liberty, or property, in its most comprehensive sense; to be heard, by

testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved. *If any question of fact or liability be conclusively presumed against him, this is not due process of law."* [Emphasis supplied.]

The cases of Wise v. Miller, 215 Ala. 660, 111 So. 913; Life & Casualty Ins. Co. of Tennessee v. Womack, 228 Ala. 70, 151 So. 880; Byars v. Town of Boaz, 229 Ala. 22, 155 So. 383; Ridge v. State ex rel. Tate, 206 Ala. 349, 89 So. 742, are all civil cases. In each of these cases, in discussing whether there was or was not a denial of due process, the court assumed as axiomatic that due process of law in civil cases is constitutionally guaranteed in Alabama. In our most recent pronouncement on this subject, in the case of Phillips v. Hinkle, Ala., 78 So.2d 800, 804, decided March 10, 1955, this court quoted the language in Dearborn v. Johnson, 234 Ala. 84, 173 So. 864, 867, as follows:

" 'Nor do we think the invalidity of this act is to be rested upon the theory of a denial of due process of law. Our cases recognize, in line with the authorities generally, that the due process clause of the Constitution (section 6) is applicable to tax proceedings, and it was so declared by this court in State Tax Commission v. Bailey & Howard, 179 Ala. 620, 60 So. 913; State Tax Commission v. Tennessee Coal, Iron & R. Co., 206 Ala. 355, 89 So. 179. It only remains to ascertain what is necessary to meet the requirements of due process. * * *' "

While it is true, as argued by appellee's counsel, that art. 1, § 6, Constitution of Alabama 1901, begins "That in all criminal prosecutions, the accused * * *", it must be remembered that in the instant case the supposed justification for removing appellant's telephone was that the appellant was accused of using the telephone for criminal purposes. Art. 1, § 6, supra, continues "nor be deprived of life, liberty, or *property*, except by due process of law; * * *." [Emphasis supplied.]

In addition to the protection afforded appellant by the law of Alabama, the Fourteenth Amendment to the Federal constitution prohibits any State of depriving any person of life, liberty or property without due process of law. Even Rhode Island admits this provision of the Federal Constitution is applicable to civil cases. Notice and hearing, which were denied the appellant before her telephone was summarily removed, are the backbone of due process. The Supreme Court of the United States in the Alabama case of Simon v. Craft, 182 U.S. 427, 21 S.Ct. 836, 45 L.Ed. 1165, said:

"The proceedings in a state court, in order to constitute due process of law under U.S.Const. 14th Amend., need not be by any particular mode, if they constitute a regular course of proceedings *in which notice is given of the claim asserted, and an opportunity afforded to defend against it."* [Emphasis supplied.]

Eminent counsel for the appellee next argue that due process was not violated because the scope of Title 48, Sections 57, 63 and 79, Code of Alabama 1940, are broad enough to countenance an appeal by the appellant, to the Public Service Commission to have her telephone service restored. By the same token, if the police commissioner's request was based on fact rather than mere suspicion, he had a right to apply to the Public Service Commission for an order directed to the telephone company to discontinue the subscriber's telephone; and thereby afforded the appellant notice and hearing as required by due process in advance of his summary action.

Distinguished counsel for the City of Birmingham says, in his brief amicus curiae:

"We feel that in the fight for law and order and against lawlessness in all forms the courts should not be astute to place obstacles in the way of effective crime prevention by the duly constituted law enforcing agencies, or to deprive such agencies of any rational and effective means of crime prevention."

The same argument might be made on behalf of wire tapping, involuntary confessions, unreasonable search and seizure, and suspension of the writ of habeas corpus. However, it is the experience of the English-speaking people that due process and the other fundamental guarantees of the Bill of Rights are the cornerstone of individual liberty, and that these basic rights can neither be disregarded nor eroded away by the winds of an ever-strengthening executive branch of the government.

The application for rehearing is denied.

SIMPSON and STAKELY, JJ., concur.

LAWSON, J., concurs in the result.

LIVINGSTON, C. J., and GOODWYN and MERRILL, JJ., dissent.