164 A.2d 254 (1960)
Blanche TOLLIN, Albert Tollin, Frances Tollin Freezman and Shirley Ingram, surviving partners doing business as Delaware Sports Service, Plaintiffs,
v.
DIAMOND STATE TELEPHONE COMPANY, a corporation of the State of Delaware, Defendant, and
State of Delaware, Defendant-Intervenor.
Court of Chancery of Delaware, New Castle.
September 8, 1960.
*255 Henry A. Wise, Jr., Wilmington, for plaintiffs.
William S. Potter and Hugh Corroon of Berl, Potter & Anderson, Wilmington, for defendant, Diamond State Tel. Co.
Januar D. Bove, Atty. Gen., of the State of Delaware, pro se, defendant-intervenor.
MARVEL, Vice Chancellor.
Plaintiffs, who are the surviving partners in a business known as Delaware Sports Service, claim to be engaged in the allegedly interstate business of collecting and disseminating to their patrons sporting event news by means of the general telephone exchange system or toll service. They seek injunctive relief against the discontinuance of telephone service presently furnished them by the defendant, The Diamond State Telephone Company, such drastic action having been requested of the telephone company by the Attorney General who claims to have reasonable grounds to believe that such service is being used by plaintiffs for the dissemination of information in the furtherance of gambling and for gambling purposes. This case has not been tried, being before me for final decision essentially on the pleadings. Accordingly, the exact modus operandi of plaintiffs' business has not been established although it appears to be conceded that any subscriber to plaintiffs' service may have his telephonic query as to a particular event plugged into the appropriate line of the general telephone system for a relay of the sporting event information sought but that plaintiffs neither act as bookmakers, nor do they give out probable odds or any other information, such as a forecast, about an imminent sporting event.
The case devoid of direct testimony, depositions or affidavits is now before the Court on motions of all parties for summary judgment, the record consisting of the pleadings and a stipulation which poses the constitutional issues allegedly raised by the pleadings and recites an agreement of all parties that plaintiffs operate a "call service" as defined in a 1952 statute which the Attorney General relied on in his request. Those parts of intervenor's answer which plaintiffs have not moved to strike[1] allege that plaintiffs' principal if not sole business is the dissemination of horseracing information and denies that plaintiffs have any property right in the telephone service currently furnished to them by the telephone company. By stipulation, as noted above, it has been agreed that the only evidence concerning plaintiffs' operation in the possession of the State indicates that they operate a "call service" which is defined in the controversial statute as to which a number of constitutional questions have been posed by agreement of the parties as meaning "* * * the furnishing of information upon request therefor or by prearrangement over general telegraphic, telephonic or teletypewriter exchange or toll service * * *." 11 Del.C. § 671. Plaintiffs take the position that their business, *256 namely the furnishing of information of results to their clients, merely serves to relieve such clients' anxiety as to the outcome of particular events in which they are interested and cannot possibly be forbidden even were the 1952 statute not, as they contend, technically invalid.
Plaintiffs concede that their business has been in operation for a period of at least eleven years, and in a 1951 opinion of Judge Carey in the case of Tollin v. State, 7 Terry 120, 78 A.2d 810, 812, the State's evidence in support of a gambling charge brought against Joseph Tollin (then sole proprietor of plaintiffs' business) under the provisions of § 669 of Title 11 Del.C. was reviewed as follows:
"The paraphernalia itself (a fifteen key switchboard, one microphone, one sound system, two amplifiers and one Western Union ticker machine, inter alia)[2] is not made or designed specifically for gambling purposes, as contrasted with devices like roulette wheels and slot machines. Actually, the evidence showed that the only use made of this equipment was the transmission of news. This information was obviously of great help to those who receive or place bets, since it included not only racing results but also last-minute details prior to a race. Moreover, I am not so naïve as to believe that Tollin did not realize the news was being used by others to facilitate gambling. But, notwithstanding that knowledge on his part, is it a violation of the quoted statute merely to disseminate such news, without more?"
Having answered the question in the negative, the court dismissed the criminal information and gave judgment for Tollin. On October 13, 1959, the Attorney General of the State of Delaware, evidently relying on a 1952 statute designed to bring about the cutting off of telephone service for the type of business carried on by plaintiffs and thus deprive plaintiffs of their claim to immunity from interference by the State, wrote to the defendant, The Diamond State Telephone Company, as follows:
"For the past several months, as you know, this office has been conducting an investigation of the business and activities of the Delaware Sports Service, 601 Tatnall Street, Wilmington, Delaware. We have reasonable grounds to believe that Delaware Sports Service is engaged in the business, of, and receiving compensation for, the dissemination of information in furtherance of gambling and for gambling purposes.
"For this reason we hereby request that you revoke your contract with the Delaware Sports Service and the individuals in charge thereof and that you cease and desist from furnishing it any further services.
"So that Delaware Sports Service may seek to test the applicable statutes in the courts, if it so desires, we request that your discontinuance of services not take place until three weeks from the date hereof. In the event the expected test litigation ensues within the three week period, we shall so advise you so that discontinuance of your services will not occur until disposition of the litigation. If you have any question of any kind or nature whatsoever, please feel free to call on us or to have your local counsel do so."
On October 15, 1959, the telephone company wrote the following letter to Delaware Sports Service:
"We have received a request from the Attorney General of Delaware, dated October 13, of which a copy is annexed, to discontinue your telephone service. The Attorney General reports that he has reasonable grounds to believe that the service is being used in the business of disseminating information in furtherance of gambling and for gambling purposes.
"Under § 675 of Title 11 of the Delaware Code and under paragraph 20 of § 1 of the *257 Company's Tariff P.S.C.Del. No. 1[3] which is on file with the Delaware Public Service Commission, the Company is obliged to revoke its contract and terminate service in view of the letter from the Attorney General referred to above. Therefore, as suggested in the Attorney General's letter, you are notified that your telephone service at 601 Tatnall Street, Wilmington, Delaware, will be terminated on November 3, 1959, which is three weeks from the date of the Attorney General's letter."
Plaintiffs, having brought this action in the meantime, allege that they have a material property interest in a prospering business which has been built up over a period of eleven years and that termination of their present telephone service, a sine qua non to the operation of such business, would destroy it. They contend that the information given out by them is merely that concerning the results of sporting events, information that is less comprehensive than that generally obtainable from newspapers, radio stations and other media engaged in the distribution of information about such events, it being pointed out that other purveyors of sporting event information not only give out results but also probable betting odds before events, and, in the case of television and radio, selected running accounts.
Plaintiffs submit that the statute alluded to by the Attorney General in his request of October 13, 1959, namely chapter 493 of Vol. 48, Laws of Delaware,[4] an act adopted according to its title "* * * to regulate public utilities in the furnishing to others of private wire service and other service for the dissemination or receipt of information in furtherance of gambling * * *" is invalid on a number of grounds which they advance on a constitutional level. They also seek to stress the unreasonableness of such statute by means of an argument of reductio ad absurdum. Plaintiffs profess to be shocked at the allegedly vast scope of the statute under attack, contending that were it valid and to be enforced in a nondiscriminatory manner, it would penalize all persons engaged in giving out information concerning future events such as security and commodity futures and the like, however, I do not believe that the statute as a whole should be so unreasonably read, being of the opinion that it was enacted by the Legislature to deprive those who aid and abet the professional gambler and his clientele by giving flash results on sporting events of an essential tool, namely telephone service.
Notwithstanding the fact that not only plaintiffs but all of the parties to this litigation are evidently seeking through cross-motions for summary judgment to receive final nisi prius directions from this Court as to their respective rights and duties under all sections of the 1952 statute here involved, the giving of advisory opinions is not a proper function of this Court. Furthermore, I believe that there is no way short of a hearing finally to dispose of the issue actually raised by the pleadings, namely plaintiffs' claimed right to telephone service, and I am satisfied that in the meantime plaintiffs are entitled to such service because the facts as to the uses to which plaintiffs put their present general telephone service must be made a matter of record before there can be a determination as to whether or not such uses are in violation of law and so subject to control. Compare Andrews v. Chesapeake & Potomac Telephone Co., D.C.D.C., 83 F.Supp. 966. How *258 and where should such facts appropriately be made a matter of record?
There is no doubt but that The Diamond State Telephone Company is a public utility and as such must furnish nondiscriminatory, impartial service to the public at large under the primary direction of the Delaware Public Service Commission. § 121 of Title 26 Del.C. defines the general jurisdiction and powers of such commission as follows:
"The Commission shall have general supervision and regulation of all public utilities and also over their property, property rights, equipment, facilities and franchises so far as may be necessary for the purpose of carrying out the provisions of this title."
§ 135 of the same Title further provides:
"The Commission may, after hearing, upon notice, by order in writing, require every public utility to furnish safe, adequate and proper service and keep and maintain its property and equipment in such condition as to enable it so to do."
§§ 183 through 191 set forth rules and procedures governing hearings and the implementation of Commission orders, and § 192 provides for appeals as follows:
"(a) Any public utility affected by any final order made by the Commission, or any other original party to or any intervenor in the proceedings before the Commission in which such order was entered and affected thereby, may appeal from such order to the Superior Court within 30 days from the date upon which such order is served. The appeal shall be filed with the Prothonotary of the Court and summons in the appeal shall be served upon the secretary of the Commission either personally or sent by registered mail to the office at the State House, Dover, Delaware, and shall also be served upon all other parties to the proceeding below, other than the appellant.
"(b) Upon every appeal the cause shall be determined by the Court from the record (which shall include a type-written copy of the evidence and of the findings and order and opinion, if any, of the Commission) without a jury, and the court may affirm, modify or revise the order of the Commission, in whole or in part, or may remand the cause to the Commission for rehearing, in whole or in part. The Superior Court is vested with jurisdiction and power to hear and determine all such appeals, and with power to make any and all rules needful or convenient in the premises. Upon the determination of every appeal, a copy of the opinion and order of the Court shall be certified to the Commission."
Generally speaking, where an administrative agency exists with authority to regulate a particular type of business or field, courts should stand aside until prior resort to such agency has been sought, United States v. Western Pacific R. Co., 352 U.S. 59, 61, 77 S.Ct. 161, 1 L.Ed.2d 126; 3 Davis Administrative Law Treatise (1958) § 1901, 67 Harvard Law Review 929, and Smith v. Highway Board, 171 Vt. 343, 91 A. 2d 805.
Obviously, if the Public Service Commission does have jurisdiction over the type of complaint made by the Attorney General concerning plaintiffs' use of the telephone company's service, then such commission in the first instance must determine whether or not plaintiffs' telephone service may be properly discontinued. This appears to have been the course followed (notwithstanding an initial application for equitable relief in the courts) in the case of Paterson Publishing Co. v. New Jersey Bell Tel. Co., 21 N.J. 460, 122 A.2d 599, 603, wherein the court stated in affirming an order of the Board of Public Utility Commissioners which had declined to direct the reinstatement of telephone service for the appellant:
*259 "It is of course true, as the Paterson Publishing Company points out, that a public utility such as a telephone company is under a general obligation to serve the public without arbitrary discrimination; and the utility is not justified in refusing services to legitimate business enterprises simply because they disseminate information which may possibly be used by some for illegal purposes. Thus, reputable newspapers contain racing results and other sporting items which are readily available to all members of the public including, incidentally, those who may be engaged in bookmaking or other illicit activities. These racing results are delayed rather than immediate, no charges are imposed beyond the normal prices of the newspapers, and the newspapers are not distributed for the primary purpose of furthering gambling or other illegal activities. Cf. Pennsylvania Publications v. Pennsylvania Public Utility Comm., 349 Pa. 184, 36 A.2d 777, 153 A.L. R. 457 (1944). However, in the instant matter, the operation conducted by Paterson Publishing Company was not a legitimate one which was only incidentally used by persons participating in bookmaking; on the contrary its very design was to serve such persons. The Board of Public Utility Commissioners so found and, even if the evidence were less compelling than it actually is we would not upset its finding in the utter absence of any affirmative showing that it was unreasonable, arbitrary or capricious."
While §§ 671-677 of Title 11 Del. C. are obviously a hodge-podge of civil and criminal provisions designed to deal summarily with the wire service aspect of large scale gambling, there is, as noted earlier, no possible basis here for this Court to be asked to pass on the constitutionality of any of these sections other than the one directly involved in this litigation, namely § 675.[5] I have no doubt but that this particular section is in itself invalid because it purports to permit the cutting off of telephone service without a hearing and to absolve the telephone company from all liability for damages thereby resulting, Andrews v. Chesapeake & Potomac Telephone Co., supra, and see also Katz v. American Tel. & Tel. Co. (F.C.C.) 92 P.U.R. (N.S.) 1, aff'd 98 P.U.R. (N.S.) 134. Compare Pike v. Southern Bell Tel. & Tel. Co., 263 Ala. 59, 81 So.2d 254, and Jannuzzio v. Hackett, 32 Del.Ch. 163, 82 A.2d 730 Nonetheless, there would seem to be no reason why the dissemination of information in furtherance of gambling and for gambling purposes may not be made unlawful by act of the Legislature. But be this as it may, it must first be determined exactly what type of information plaintiffs disseminate before they can be lawfully deprived of telephone service except for non-payment of proper charges under their contract or other breach permitting summary termination of service. Finally, it necessarily follows that plaintiffs may not be barred from seeking injunctive relief by reason of alleged unclean hands inasmuch as the precise nature of their use of telephone service has not been established.
Plaintiffs' motion for summary judgment will be granted to the extent of enjoining the defendant, The Diamond State Telephone, from terminating plaintiffs' present telephone service prior to a hearing on the uses to which plaintiffs put such service. Defendant's and defendant-intervenor's motions will be denied in toto. The Court will confer with counsel as to the appropriate steps to be taken to determine the jurisdiction of the Public Service Commission *260 to hear and act on the facts concerning plaintiffs' use of telephone service in the conduct of their business.
Order on notice.
NOTES
[1] Chancery Rule 8(d), Del.C.Ann. provides inter alia "* * * Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided."
[2] These items have been extracted from the information lodged against Tollin.
[3] "Service is furnished subject to the condition that it will not be used for an unlawful purpose. Service will not be furnished if any law enforcement agency, acting within its jurisdiction, advises that such service is being used or will be used in violation of law, or if the Telephone Company receives other evidence that such service is being or will be so used in violation of law, or if the Telephone Company receives other evidence that such service is being or will be so used."
[4] §§ 671-677, Title 11 Del.C.
[5] "Any public utility shall, when it is advised in writing by any law enforcement agency acting within its jurisdiction that any service furnished by it is being used in the dissemination of information in furtherance of gambling, or for gambling purposes, revoke its contract to furnish any such service.

"No public utility shall be liable at law or in equity for any damages or penalties, either civil or criminal, for such revocation of contract."