[S. F. No. 22187. In Bank. Sept. 29, 1966.]

EDGAR J. SOKOL, Petitioner, v. PUBLIC UTILITIES COMMISSION, Respondent; PACIFIC TELEPHONE AND TELEGRAPH COMPANY, Real Party in Interest; THOMAS C. LYNCH, as Attorney General, etc., Intervener.

Marshall W. Krause and Leo E. Borregard for Petitioner.

Mary Moran Pajalich, Roderick B. Cassidy and Timothy E. Treacy for Respondent.

Pillsbury, Madison & Sutro, John A. Sutro, Noble K. Gregory, James F. Kirkham and Walter R. Allan for Real Party in Interest.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, John F. Kraetzer and Daryl Granberg, Deputy Attorneys General, for Intervener.

MOSK, J.—Petitioner seeks review of an order of the Public Utilities Commission which reaffirms a commission rule requiring a communications utility to summarily discontinue service to a subscriber if advised by any law enforcement agency that the service is being used for unlawful purposes. We conclude that inherent in this naked rule is a constitutional infirmity, but that the defect is not necessarily incurable if the rule is appropriately amended.

Petitioner operated a club which, for dues of five dollars, supplied its members with predictions as to the fleetest horses at local racetracks, an activity which the parties concede violated no state or local law. This information was communicated to the members by telephone. In a letter dated October 11, 1961, and addressed to Pacific Telephone and Telegraph Company (hereinafter Pacific), the San Francisco Chief of Police asserted that he had reasonable cause to believe that the telephones supplied to petitioner were being used in connection with illegal bookmaking activity. The letter further stated, ''In accordance with the order of the State of California Public Utilities Commission decision number 41415 . . . it is requested that you disconnect [the] telephone service.''

Decision No. 41415, cited in the letter, requires that a communications facility discontinue service to any subscriber the utility has reasonable cause to believe is using the service in connection with unlawful activity. A written notice from a

law enforcement official that a telephone is being used for such purpose is declared to be sufficient to constitute reasonable cause. The decision also sets forth procedure by which the subscriber may file a complaint with the commission after the removal of the telephone; it further provides that the action before the commission shall be the exclusive means of challenging the termination of service, and thus insulates the communications utility from civil damage actions.[1]

Petitioner's telephones were disconnected on October 13, 1961, and five days later he filed a complaint with the commission seeking restoration of service. Pursuant to an interim order of the commission, service was temporarily restored on October 27, 1961. A hearing subsequently took place, and in January 1962 the commission issued Decision No. 63178, which held that there was insufficient evidence in the record to support the allegation that the telephone facilities had been used for illegal purposes and ordered the interim relief to be made permanent. The decision found that Pacific had "acted upon reasonable cause in disconnecting said facilities."

In October 1962 petitioner filed an action in superior court against Pacific, certain of its employees, and various police officers, seeking damages for the wrongful discontinuance of service. In *Pacific Tel. & Tel. Co.* v. *Superior Court* (1963) 60 Cal.2d 426 [34 Cal.Rptr. 673, 386 P.2d 233], we granted Pacific's petition for a writ of prohibition restraining the trial of that action. We found that an essential issue in the case was the validity of Decision No. 41415 and concluded that it was beyond the jurisdiction of the superior court to pass upon the validity of Public Utilities Commission decisions. However, we noted then that petitioner had filed the proceeding presently before us with the commission and stated (at p. 430), "The validity of [Decision No. 41415] and the power of the commis-

---

[1]The order provides in relevant portion that "any communications utility . . . must discontinue and disconnect service to a subscriber, whenever it has reasonable cause to believe that the use made or to be made of the service, or the furnishing of service . . . is prohibited under any law, ordinance, regulation, or other legal requirement, or is being or is to be used as an instrumentality, directly or indirectly, to violate or to aid and abet the violation of the law. A written notice to such utility from any official charged with the enforcement of the law stating that such service is being used or will be used as an instrumentality to violate or to aid and abet the violation of the law is sufficient to constitute such reasonable cause. . . . [A]ny person aggrieved . . . shall have the right to file a complaint with this Commission in accordance with law. This remedy shall be exclusive. Except as specifically provided herein, no action at law or in equity shall accrue against any communications utility because, or as a result of, any matter or thing done . . . pursuant to the provisions of this decision." (47 Cal.P.U.C. 853, 859-860.)

sion to rescind it may be determined in plaintiff's proceeding before the commission subject to review by this court.''

Petitioner's complaint requests that the commission retroactively repeal Decision No. 41415 or declare it to be unconstitutional, and modify Decision No. 63178 accordingly. That complaint resulted in Decision No. 69510, in which the commission found its prior decisions to be constitutional and reaffirmed the procedures established by those decisions. While chronology has brought Decision No. 69510 before us for review, the substantive issue involves the validity of the basic rule promulgated in Decision No. 41415.

At the threshold we meet Pacific's contention that the principle of res judicata bars us from reaching the substantive issue presented in this action. Pacific insists that Decision No. 63178 conclusively established that the company had reasonable cause to terminate petitioner's telephone service and that petitioner waived his right to challenge the finding of reasonable cause by permitting the decision to become final.

We cannot overlook the fact that Decision No. 63178 involved only petitioner's right to permanent restoration of telephone service, and the relief which he sought was granted in full. The proceeding was brought pursuant to the procedure established in Decision No. 41415, the purpose of which was to afford petitioner the opportunity to obtain prospective relief without undue delay. It would be incompatible with this purpose to require him to raise issues other than those relating to his demand for restoration of service. His right to such relief turned not upon the issue of probable cause as of the time service was terminated, but upon whether the facts presented at the hearing demonstrated that he had used the telephones in connection with an illegal activity. Since the finding of reasonable cause was not a necessary element of the commission's order, petitioner is not barred from raising that issue in the instant proceeding. (See *Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 384-385 [295 P.2d 405].)[2]

We next face another preliminary procedural problem raised by the Attorney General, who has intervened in this proceeding. He argues that a petition for rehearing was filed

---

[2]It should also be noted that the commission appears to have based its finding of reasonable cause upon the rule established in Decision No. 41415. Therefore, it seems that the only finding of fact actually made was that Pacific had received a letter from the San Francisco Police Department requesting that telephone service be discontinued, for Decision No. 41415 declares that receipt of such a letter constitutes reasonable cause for discontinuance of service.

with the commission on August 20, 1965 (and not denied until December 7, 1965), that the petition for rehearing should be deemed to have been denied 20 days after it was filed even though it had not yet actually been denied (see Pub.Util.Code, § 1733), and that the petition to this court was required to be filed within an additional 30 days, or by October 9, 1965 (see Pub.Util.Code, § 1756). The petition was filed on November 12, 1965. Public Utilities Code section 1733 provides that 20 days after a petition for rehearing has been filed, it "*may* be taken *by the party* making the application to be denied. . . ." (Italics added.) The language of the section is permissive rather than mandatory, and appears to have been enacted solely for the benefit of the party making the application. We find no authority in support of a contrary interpretation. Thus the proceeding is properly before us and we reach the merits of the commission's decision.

No California case has dealt with the precise issue whether the procedures established in Decision No. 41415 are constitutionally infirm because they deprived petitioner of property without due process of law, first because they did not provide him with an opportunity to challenge the allegations of the police department until after his telephones had been removed and his business had been destroyed, and second, because the decision denies him any action against the telephone company for the wrongful discontinuance of service.

The holdings in other jurisdictions, to the extent they are apposite, are conflicting. Two New York cases upheld the right of communications companies to remove telephones at the request of the police. (*Dente* v. *New York Tel. Co.* (1944, Sup. Ct.) 55 N.Y.S.2d 688, 692; *People* ex rel. *Restmeyer* v. *New York Tel. Co.* (1916) 159 N.Y.S. 359 [173 App. Div. 132, 134].) However, neither case involved a statute or administrative order requiring that service be terminated at the request of the police, and in *People* ex rel. *Restmeyer* v. *New York Tel. Co., supra*, the court relied in part on the fact that the subscriber did not deny he had used his telephone for unlawful purposes. The New York courts appear to have treated the issue as one of private contractual rights.

In *Taglianetti* v. *New England Tel. & Tel. Co.* (1954) 81 R.I. 351, 357-358 [103 A.2d 67], the court held that guarantees of the Fourteenth Amendment could not be invoked by the subscriber because the removal of his telephone did not constitute state action, even though the company acted at the express request of the police. ▮▮▮ Here, Decision No. 41415 *requires* the company to remove any telephone which the

police request be removed. In such circumstances, the involvement of state officials is not obscured by the act of the telephone company employee who physically disconnects the telephones. (See *Burton* v. *Wilmington Parking Authority* (1961) 365 U.S. 715, 725 [81 S.Ct. 856, 6 L.Ed.2d 45]; *Mulkey* v. *Reitman* (1966) 64 Cal.2d 529, 541-542 [50 Cal.Rptr. 881, 413 P.2d 825].)

Cases from other jurisdictions contain statements to the effect that hearing is required prior to discontinuance of service, but in many of these opinions the language is dictum. In some, the subscriber was notified prior to the termination of service and the action was brought to enjoin the impending termination. (*Andrews* v. *Chesapeake & Potomac Tel. Co.* (D.D.C. 1949) 83 F.Supp. 966; *Tollin* v. *Diamond State Tel. Co.* (1960) 39 Del.Ch. 350 [164 A.2d 254].)

*Telephone News System, Inc.* v. *Illinois Bell Tel. Co.* (N.D. Ill. 1963) 220 F.Supp. 621, 633-635, involved the validity of a federal statute permitting the removal of telephones being used for unlawful interstate commerce. (18 U.S.C. § 1084, subd.(d).) Since the federal statute requires notice prior to the termination, it was unnecessary to decide whether such notice is required by the Constitution. The statute is significant, however, in its indication that the federal government has apparently discovered no impediment to law enforcement in the insistence upon advance determination of the probable cause for service cessation. This should tend to allay the fears expressed by the intervener Attorney General that such a determination inevitably produces insurmountable difficulties in the enforcement of gambling laws.

We are not without the help of numerous cases dealing with the right to hearing in factual contexts somewhat analogous to that involved here. *Ewing* v. *Mytinger & Casselberry* (1950) 339 U.S. 594, 599 [70 S.Ct. 870, 94 L.Ed. 1088], held that the federal government could commence legal proceedings against a company by executing multiple seizures of an allegedly misbranded food or drug product; the opportunity to appear at the subsequent court proceeding was held to satisfy the requirements of due process. It is also the law that an emergency price control regulation may take effect prior to a hearing (*Yakus* v. *United States* (1944) 321 U.S. 414, 439-440 [64 S.Ct. 660, 88 L.Ed. 834]), that a person's driver's license may be suspended prior to hearing if he fails to post security following an accident (*Escobedo* v. *State of California* (1950) 35 Cal.2d 870, 876 [222 P.2d 1]) or is convicted of drunk driving

(*Hough* v. *McCarthy* (1960) 54 Cal.2d 273, 285 [5 Cal.Rptr. 668, 353 P.2d 276]), that commodities which are falsely labeled as to weight may be ordered off sale (Bus. & Prof. Code, § 12211), and that a serviceman may be discharged prior to a hearing concerning the conditions of discharge (*Reed* v. *Franke* (4th Cir. 1961) 297 F.2d 17, 27).

On the other hand, *Matter of Lambert* (1901) 134 Cal. 626, 629-630 [66 P. 851, 86 Am.St.Rep. 296, 55 L.R.A. 856], held that a person may not be committed to a state mental institution if he has been denied the opportunity to challenge the commitment before being placed in the institution. *Silver* v. *New York Stock Exchange* (1963) 373 U.S. 341, 363 (fn. 15), 365 [83 S.Ct. 1246, 10 L.Ed.2d 389], stated that one may not be deprived without a hearing of a communications service essential to his business by action of the state or of a private agency subject to mandatory self-regulation.

The various conflicting cases demonstrate that there is no rule of universal application concerning the right of an individual to present his views at a hearing prior to the institution of action affecting his substantial rights. ■ What is due process depends on circumstances. It varies with the subject matter and the necessities of the situation. (Holmes, J., in *Moyer* v. *Peabody* (1909) 212 U.S. 78, 84 [29 S.Ct. 235, 53 L.Ed. 410].) Its content is a function of many variables, including the nature of the right affected, the degree of danger caused by the proscribed condition or activity, and the availability of prompt remedial measures. All the authorities cited above are distinguishable from the matter at hand in one way or another, and little purpose would be served by examining the distinctions minutely.

The Attorney General attributes the effectiveness of the procedure set forth in Decision No. 41415 to the fact that most bookmakers rely almost exclusively upon the telephone to contact their customers. It is said that notification before termination of service would permit a bookmaker to arrange by subterfuge for other telephone service and to notify his customers of the new telephone number when they contacted him during the period between notification and termination of service. The abrupt discontinuance of service without advance notice obviously precludes such course of action.

Unfortunately, the sword is double-edged, for the procedure is as effective in destroying a legal business as it is in suppressing an illegal enterprise. ■ In modern commercial society, telephone communication is indispensable to legitimate

business operations, and the discontinuance of service for even a limited period of time is capable of causing a company to fail; the instant case is a prime illustration. It is also significant that the disconnection of telephones not only may deprive the subscriber of the monetary value of his economic venture, but in such circumstances denies him an essential means of communication for which there is no effective substitute. Hence, this restraint upon communication by the subscriber also affects his right of free speech as guaranteed by the First Amendment of the federal Constitution. "Inasmuch as the rights of free speech and press are worthless without an effective means of expression, the guarantee extends both to the content of the communication and the means employed for its dissemination." (*Weaver* v. *Jordan* (1966) 64 Cal.2d 235, 241-242 [49 Cal.Rptr. 537, 411 P.2d 289].)

Had the police desired to search the premises occupied by petitioner or to seize his property, they would have been required to first satisfy a magistrate that there was probable cause for the issuance of a search warrant. (U.S.Const., Amend. IV; Cal.Const., art. I, § 19.) The Fourth Amendment of the federal Constitution is binding upon the states only because the right protected is "implicit in 'the concept of ordered liberty' and as such is enforceable against the States through the Due Process Clause." (*Wolf* v. *Colorado* (1949) 338 U.S. 25, 27-28 [69 S.Ct. 1359, 93 L.Ed. 1782] overruled on other grounds in *Mapp* v. *Ohio* (1961) 367 U.S. 643, 655 [81 S.Ct. 1684, 6 L.Ed.2d 1081].) In the absence of an arrest or other special circumstances (see *People* v. *Grubb* (1965) 63 Cal.2d 614, 618 [47 Cal.Rptr. 772, 408 P.2d 100]), these requirements apply even though the consequent delay may increase the risk that the property which the police seek will be destroyed or used in the commission of a crime; both the state and federal Constitutions have subordinated such risks to the right of freedom from arbitrary police intrusion. Moreover, due process requirements of law are not for the sole benefit of an accused. They are the best insurance for the government itself against those blunders which leave lasting stains on a system of justice. (Jackson, J., dissenting in *Shaughnessy* v. *United States* (1953) 345 U.S. 206, 224-225 [73 S.Ct. 625, 97 L.Ed. 956].)

The letter issued by the San Francisco Police Department requesting that petitioner's telephone service be terminated is dated October 11, 1961, but the telephones were not in fact disconnected until two days later. We perceive no insuperable

obstacle to a procedure which would permit the police to secure authorization for the termination of service within an equally brief period of time. However, even if some additional delay necessarily eventuated, the law enforcement risks involved would certainly be no greater than those resulting from the requirement that a warrant be obtained prior to a search.

In view of the importance of the fundamental rights affected, we would be justified only by the most compelling considerations in permitting the deferment of all procedural safeguards until the fait accompli: termination of the telephone service. We have looked in vain here for any justification for applying standards of due process substantially less exacting than those pertaining to searches. ▇▇▇ Therefore, we conclude that the rule promulgated in Decision No. 41415 does not conform to the due process requirements of the state and federal Constitutions in that it provides for no review of the bare allegations of the police prior to the termination of service.

Although the commission has reopened the case in which Decision No. 41415 was issued, the rule promulgated in that decision has not yet been superseded by action of the commission or the Legislature and is presently in effect. Thus, it would be speculative for this court to pass upon the constitutionality of any proposed or hypothetical procedural arrangement, since a plethora of constitutionally valid solutions are conceivable. ▇▇▇ However, whatever new procedure is hereafter devised must at a minimum require that the police obtain prior authorization to secure the termination of service by satisfying an impartial tribunal that they have probable cause to act, in a manner reasonably comparable to a proceeding before a magistrate to obtain a search warrant. In addition, after service is terminated the subscriber must be promptly afforded the opportunity to challenge the allegations of the police and to secure restoration of the service. A procedure incorporating these measures would provide substantial protection to the subscriber without hindering the enforcement of gambling laws.

▇▇▇ Having found Decision No. 41415 unconstitutional, we come finally to the question whether an action for damages should lie against the company, which could have refused to remove the telephones only by posturing defiance of an order of the commission, thus subjecting the regulated utility to discipline. (Pub.Util.Code, § 2107.) Technically, the issue of damages is not before us since the present action is to review a decision of the Public Utilities Commission and the commis-

sion has awarded no damages. However, the parties have invited us to decide the issue; they have discussed it at length in the briefs and it is central to the related superior court action brought by petitioner. The question is one of law, and the failure to consider it now would serve no purpose other than to exacerbate the burdens of the litigation.

Decision No. 41415 provides that the utility must act upon reasonable cause but that written notice from any law enforcement agency that the service is being used in connection with illegal activity ''is sufficient to constitute such reasonable cause.'' (47 Cal.P.U.C. 853, 859-860.) Petitioner argues that the quoted language is permissive rather than mandatory and that liability of the utility may arise from its failure to conduct an independent investigation of the facts where such an investigation would have disclosed the falsity of the charges.

In the decision now before us the commission interprets the quoted language as providing that reasonable cause for the utility to act is conclusively established on receipt of the described communication from a law enforcement agency. This interpretation appears to be more tenable than that proposed by petitioner. The latter alternative would impose upon the utility the investigative functions of a law enforcement agency and the decision-making duty of a judicial tribunal. To suggest the vesting of such powers and duties in a private corporation is to reject it. Therefore, the question is whether a private entity may be held liable for complying with a mandatory order of the Public Utilities Commission valid upon its face, if that order is later found to be unconstitutional.

*Peterson* v. *Robison* (1954) 43 Cal.2d 690, 697 [277 P.2d 19], held that no damage action lies against a private citizen who assists in making an arrest pursuant to the request of a police officer, even when the information upon which the arrest was made proves false. The court noted that the refusal to provide such aid would constitute a misdemeanor, and declared (at p. 697), ''It would be manifestly unfair to impose civil liability upon the private person for doing that which the law [requires].'' (See also, *Mackie* v. *Ambassador Hotel etc. Corp.* (1932) 123 Cal.App. 215, 222 [11 P.2d 3].) The principle set forth in *Peterson* v. *Robison, supra,* would seem to be equally applicable to the case at hand. (See *Telephone News System, Inc.* v. *Illinois Bell Tel. Co.* (N.D. Ill. 1963) *supra,* 220 F.Supp. 621, 635.) A contrary rule would not only be inequitable but would discourage cooperation with law enforce-

ment agencies. ▮▮▮ We hold, therefore, that Pacific should not be held responsible for damages caused by its compliance with Decision No. 41415.

In view of our holding that the rule promulgated in Decision No. 41415 is unconstitutional, Decision No. 69510 is annulled.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.

Intervener's petition for a rehearing was denied October 26, 1966.