**ARTESIAN WATER COMPANY et al.,
Appellees Below, Appellants,**

v.

**CYNWYD CLUB APARTMENTS, INC.,
Appellant Below, Appellee.**

Supreme Court of Delaware.

Oct. 13, 1972.

Bayard W. Allmond, of Allmond & Wood, Wilmington, and Norman T. Hayes, Jr., of Morgan, Lewis & Bockius, Philadelphia, Pa., for Artesian Water Company.

Stanley C. Lowicki, of O'Donnell, Hughes & Lowicki, Wilmington, for Cynwyd Club Apartments, Inc.

Before WOLCOTT, C. J., and CAREY and HERRMANN, JJ.

HERRMANN, Justice:

This appeal involves the scope of authority and duty of the Public Service Commission relative to discontinuance of service by a public utility for non-payment by the consumer.

I.

Artesian Water Company (hereinafter "Artesian"), contracted to deliver water to Cynwyd Club Apartments, Inc. (hereinafter "Cynwyd") in 1966. Cynwyd complained that the water supplied during the first nine months of service contained foreign particles and was rusty and corrosive; that the deleterious nature of the water caused pipes to burst and resultant damage to Cynwyd's property. Consequentially, Cynwyd has refused to pay its water bills for the nine month period.[1]

In 1968, Artesian threatened to discontinue service because of non-payment of the delinquent bills. Cynwyd sought injunctive relief in the Court of Chancery to prevent Artesian from discontinuing service on the theory that, by reason of damage to its pipes and other property, Cynwyd had a set off. There was no evidence in that proceeding that the water supplied was not of adequate quality. The Chancery Court denied relief; and the case was transferred to the Superior Court under the Statute. 10 Del.C. § 1901.

Cynwyd then filed a complaint with the Public Service Commission against Artesian, a utility subject to the Commission's jurisdiction, requesting a stay of the still-threatened discontinuance of service and seeking an adjudication that it was not required to pay the established rate for deleterious water. After ordering service continued pending the proceedings, and after full hearing, the Commission ruled in 1969 as follows:

" * * * the corrosion encountered by Cynwyd in its apartment project was the result of, in part at least, corrosive water supplied to its system, for a period ending in 1968. Since that time the water has been of acceptable standards. There is no basis in law for the Commission to award damages to Cynwyd because of any deleterious water received by it prior to 1968. Accordingly, we find that Cynwyd's continued failure to pay the delinquent bill unwarranted and Artesian may proceed to implement its tariff by discontinuance of service for non-payment of that bill."

The Commission concluded that it

" * * * does not sit as a court of law, but rather as a quasi-legislative body for the purpose of requiring utilities to adhere to state law. Having required Artesian to perform its duty in this matter (by providing water of adequate quality), we must decline to go further with the assessment of damages."

Cynwyd appealed the Commission's decision to the Superior Court. Pending the appeal, the Superior Court stayed the order of the Commission authorizing termination of service, conditioned upon Cynwyd's bond to secure the debt.

The Superior Court upheld the Commission in part and reversed in part. It affirmed the Commission's finding that water supplied by Artesian prior to 1969 did not meet acceptable standards and was of such corrosiveness as to constitute one of the causes of damage to Cynwyd's pipes; but it reversed the Commission "insofar as it permitted the Artesian Water Company to discontinue service prior to legal resolution of a bona fide dispute over payment for prior service."

The Superior Court held that while a private supplier of water to the public may generally terminate service for non-payment, it may not do so where a bona fide dispute exists as to liability for, or correct-

---

1. All subsequent bills have been paid.

ness of, the bill. The Superior Court noted that the bona fides of the dispute between the parties was demonstrated by the Commission's finding that, prior to 1969, Artesian supplied Cynwyd with corrosive water which was not of acceptable standards.

From those findings and conclusions of the Superior Court, both parties appeal.

## II.

The crux of Artesian's appeal is the contention that the Superior Court erred in finding that there is a bona fide dispute between the parties as to liability for, and correctness of, the water bills.

■ The record before the Commission clearly shows such bona fide dispute. In those proceedings, Cynwyd contended that it should not be required to pay the established rate for deleterious water that did not meet the standards; Artesian contended that its water always met the standards. The Commission decided that, prior to 1969, Artesian supplied Cynwyd with corrosive water which was not of acceptable standards or of adequate quality. No other reasonable conclusion may be drawn from the Commission's holdings that "the corrosion encountered by Cynwyd * * * was the result, in part at least, of corrosive water supplied to its system, for a period ending in 1968"; that since "that time [1968] the water has been of acceptable standards"; and that the Commission fulfilled its function by requiring "Artesian to perform its duty in the matter (by providing water of an adequate quality), * * *."

The Commission's findings as to corrosiveness and the sub-standard quality of the water, supplied prior to 1969, is supported by sufficient competent evidence; thus, those findings may not be disturbed. We agree, therefore, with the Superior Court's conclusion that the record before the Commission shows a bona fide dispute as to liability for, and correctness of, the water bills for the period prior to 1969.

■ The question then becomes this: in view of the showing of a bona fide dispute between utility and consumer regarding the bill, did the Commission have the authority and the duty, under its general supervisory powers over the utility, to restrain termination of service pending the resolution of the dispute before the appropriate tribunal? The answer, we think, is affirmative.

■ The Public Service Commission has "general supervision and regulation of all public utilities." The Commission "may investigate, upon its own initiative or upon complaint in writing, any matter concerning any public utility." The Commission may, after hearing, "fix just and reasonable standards * * * regulations, practices * * * or services to be furnished, imposed, observed and followed thereafter by any public utility"; and may "require every public utility to furnish safe, adequate and proper service." 26 Del.C. §§ 121, 124, 131, 135. These statutory powers unquestionably authorize the Commission to regulate the termination-of-services practices of a utility, and, in a specific case, to prohibit discontinuance for nonpayment where a bona fide dispute as to the bill is shown to exist.

The authority being manifest, it is also clear that, in this case, the Commission had the duty to intervene and to restrain discontinuance, pending determination of the dispute. That duty arose upon the administrative finding that the service, rendered during the period prior to 1969 covered by the bills in controversy, was inadequate and sub-standard. The Commission correctly recognized that it "does not sit as a court of law." Application of Wilmington Suburban Water Corporation, Del.Supr., 211 A.2d 602 (1965). Therefore, it correctly avoided adjudication of the debt controversy between the parties. But the Commission should have exercised its authority to maintain the status quo as to service, pending disposition of the controversy before a court of competent jurisdic-

tion. Failure so to do was an abuse of discretion.

■ The law governing the matter was correctly applied by the Superior Court. The general rule is that a utility may terminate service for non-payment under reasonable rules and regulations; but a recognized exception to the general rule exists where, as here, there is a bona fide dispute as to the consumer's liability for, or to the correctness of, the bill. See 28 A.L.R. 472; 43 Am.Jur. "Public Utilities and Service", §§ 64, 65; 94 C.J.S. "Waters" § 305; Barry v. Commonwealth Edison Co., 374 Ill. 473, 29 N.E.2d 1014 (1940).

■ The rationale for the result reached here was well stated by Judge Quillen in this case:

> "Water is a necessity of life. A heavy burden is placed upon a consumer when service is terminated. Termination is injurious to health and creates a risk of fire damage. The relative inconvenience that arises from subjecting a water company to the necessity of resorting to the courts to collect disputed claims cannot compare to the hardship to the consumer arising from the termination of service."

We add these additional policy considerations in support of the result reached here: As a matter of fairness and practicality, the public utility must be protected against arbitrary non-payment by consumers of bills as to which there is a pretended dispute, just as the consumer must be protected from arbitrary termination of service for non-payment of bills as to which there is a bona fide dispute. The function of making a quick, initial screening of the bona fides of the dispute must rest somewhere; the Public Service Commission is the most appropriate tribunal for that screening. If, upon complaint to the Commission, a bona fide dispute is not made to appear, discontinuance of service may be permitted; otherwise not. By analogy, in Tollin v. Diamond State Telephone Co., 39

Del.Ch. 350, 164 A.2d 254 (1960), it was recognized to be a Commission function to determine, in the first instance, whether telephone service, claimed to be used for illicit gambling purposes, could be properly discontinued by the utility.

The alternatives are to bar discontinuance of service whenever any dispute as to the bill is asserted, however capricious it may be, and relegate the utility to a collection suit; or to require payment by the consumer of all bills, however mistaken or unfair they may be, in order to avoid termination of service. Neither of these alternatives is fair or practical.

Artesian asks: what are its remedies; must it now file suit to collect for service rendered prior to 1969; if so, what are the issues; what is the status of the bond which was posted pending this appeal; and what is to be done with the Superior Court case that was created by the transfer of the 1969 Chancery Court proceeding?

We must limit our legal advice to the initial questions: if Artesian wishes to collect for service rendered prior to 1969, it must initiate an action therefor in a court of competent jurisdiction; and discontinuance of service must await the outcome of the controversy.

Upon Artesian's appeal, the judgment below is affirmed.

### III.

Cynwyd's cross-appeal is without merit.

■ Cynwyd contends that the Superior Court did not resolve all issues raised on the appeal from the Commission; the answer is that the Superior Court resolved all issues necessary to be resolved for appellate disposition of the matters properly before the Commission. Cynwyd contends that the Public Service Commission erred in certain findings of fact; the answer is that there was sufficient competent evidence to support the findings pertinent to the appellate disposition of the matters properly before the Commission. Finally,

Cynwyd contends that it was error to limit the Commission's jurisdiction so as to exclude adjudication of the consumer's liability for the bills in dispute. As we have indicated, such adjudication is for the courts.

Upon Cynwyd's appeal, the judgment below is affirmed.