Richard E. ASSAD et al[1]
vs.
NEW ENGLAND TELEPHONE
and TELEGRAPH CO. et al

Civ. A. Nos. 45417, 45437
45480, 45645

Superior Court Department
Trial Court of the
Commonwealth of Massachusetts

**December 18, 1980**

Richard Pauling, Richard Egbert, Anthony Traini for the plaintiff.
Beverly P. Brown for the defendant.

## MEMORANDUM AND ORDER ON THE MOTION OF THE PLAINTIFFS FOR A PRELIMINARY INJUNCTION

In these actions, the plaintiff telephone subscribers seek an injunction prohibiting the defendant New England Telephone and Telegraph Company from disconnecting or otherwise interfering with the plaintiffs' telephone service. Upon petition of the plaintiffs, this court entered a temporary restraining order pending determination of the plaintiffs' application for a preliminary injunction. The full hearing was held on December 12, 1980.

The pertinent facts may be summarized as follows. During the course of an investigation of illegal gaming and organized crime activities, the Massachusetts State Police procured two warrants from this court authorizing the interception of telephone communications over certain lines. The telephone conversations subsequently intercepted revealed gaming violations communicated between the bugged lines and numerous other telephone lines. Pursuant to the information received, the District Attorney for Suffolk County secured grand jury indictments against various individuals for violations of G.L. c. 271, § § 17, 17A. These individuals, among whom are certain of the plaintiffs, have been arraigned and are awaiting trial on these charges.

Because the statutory violations involved the use of telephone lines, the State Police notified the defendant telephone company that the plaintiff subscribers were using their telephones for unlawful purposes. Pursuant to New England Telephone and Telegraph Company General Regulations, the defendant telephone company is required to terminate telephone service to a customer whenever a law enforcement agency advises that such service is being used or will be used in violation of law.[2] The plaintiffs in this action all received notice from the defendant telephone company that their telephone service would be discontinued due to the State Police report that the lines were being used for unlawful purposes. The notification stated the defendant telephone company's intention to discontinue telephone service ten days from the date of the notice.

In support of their requests for a preliminary injunction, the plaintiffs make two principal contentions: (1) that the language of both G.L. c. 271, § 47 and the defendant telephone company's regulation does not apply to the plaintiffs; and (2) that the regulation, by failing to provide for a pretermination hearing, deprives the plaintiffs of their constitutional right to due process of law.

The court finds no merit in the plaintiffs' initial contention that the defendant tele-

phone company's regulation does not apply in the present instance. The plaintiffs argue that because the regulation speaks of terminating service that "is being used or will be used" illegally, it cannot be applied where the alleged violations occurred in the past. Giving effect to such a construction would leave a nugatory regulation. Upon the plaintiffs' reading of the regulation, the defendant telephone company could never terminate telephone service unless it could conclusively show that the service is being or will be used for illegal purposes. The defendant telephone company, of course, is a public utility, not a criminal investigation service. A plain reading of the regulation indicates that the defendant telephone company is required to terminate service whenever a law enforcement agency notifies it of illegal telephone use. The defendant telephone company properly followed this regulation in the present case.

It may further be noted that this construction of the regulation is in keeping with an undeniable purpose of the legislation, to prevent the continued use of communications to facilitate professional gambling activities. See, Telephone News Sys., Inc. v. Illinois Bell Tel. Co., 220 F.Supp. 621, 631 (N.D.Ill. 1963) (discussing legislative history of federal gambling statute, 18 U.S.C. § 1084(d), aff'd per curiam, 376 U.S. 782 (1964).[3]

The plaintiffs' second argument, that the defendant telephone company's termination procedures violate the guarantees of procedural due process, warrants greater attention. Although research does not disclose a Massachusetts case on point, other jurisdictions have confronted this issue. The degree of protection afforded telephone subscribers varies among the jurisdictions. While some jurisdictions provide only for a hearing subsequent to the discontinuation of service, see, e.g., Lopez v. New Jersey Bell Tel. Co., 51 N.J. 362, 372 240 A.2d 670, 675-676 (1968), rev'd on other grounds, 54 N.J. 129, 253 A.2d 802 (1969); Sokol v. Public Util. Comm'n, 65 Cal.2d 247, 253, 53 Cal.Rptr. 673, 679, 418 P.2d 265, 271 (1966); Taglianetti v. New England Tel. & Tel. Co., 81 R.I. 351, 357-358, 103 A.2d 67, 72 (1954),

other jurisdictions require a hearing prior to telephone service termination. See, e.g., Andrews v. Chesapeak & Potomac Tel. Co., 83 F.Supp. 966, 969 (D.D.C. 1949); Tollin v. Diamond State Tel. Co., 39 Del. Ch. 350, 359, 164 A.2d 254, 259 (1960); Pike v. Southern Bell Tel. & Tel. Co., 263 Ala. 59, 64 81 So.2d 254, 258 (1955). Pursuant to the federal gambling statute, 18 U.S.C. § 1084(d), utilities must give the subscriber advance notice of discontinuance, allowing the subscriber the opportunity to seek appropriate judicial relief. See, Telephone News Sys., supra, at 636. At least one jurisdiction follows this practice. See, Paterson Publishing Co. v. New Jersey Bell Tel. Co., 21 N.J. 460, 462, 122 A.2d 599, 600-601 (1956).

Before applying the rationale of these decisions to the instant case, two points require mention. First, it seems clear that the value of the telephone to modern society for business, political, and social purposes necessitates its careful protection against arbitrary or unreasonable interference. Recent cases have indicated that individuals have a property interest in telephone service itself, see, e.g., Telephone News Sys., supra, at 625-626; Pike v. Southern Bell Tel. & Tel. Co., supra, at 64, 81 So.2d at 258, and this Court assumes the validity of this proposition for present purposes. Second, the Court notes that in civil actions of this kind the defendant has the burden of providing by a preponderance of the evidence that the plaintiffs' telephones were used for illegal purposes. See, Telephone News Sys., supra, at 628.

Turning to the present case, the following factors are determinative. Prior to the time that the defendant telephone company notified the plaintiffs of its intention to terminate their telephone service,[4] the State Police furnished two Superior Court judges with sufficient evidence to allow the issuance of a wiretap against two of the plaintiffs. Under a leading California decision, where the police procure a warrant from an impartial tribunal authorizing discontinuance, and subsequent judicial review is available, the requirements of due process are met. Sokol v. Public Util. Comm'n, supra, at 253, 418 P.2d at 271, 53 Cal. Rptr. at 679.

Accord, Lopez v. New Jersey Bell Tel. Co., supra, at 372, 240 A.2d at 675. Here the defendant also did not act prior to the time that indictments were returned against the individuals connected with the lines in question. Thus, the grand jurors, as well as two judges (in the case of two lines) were satisfied that probable cause existed to believe that the telephones were being used for illegal purposes.

In addition to benefiting from the protections inherent in our grand jury and warrant procedures, the plaintiffs were here additionally afforded the opportunity to seek judicial review prior to the termination of service. Thus the plaintiffs here were afforded the type of protection that the plaintiffs received in Sokol and Lopez, where the requirements of due process were held satisfied.

On the basis of an examination of the facts of this case and the pertinent case law, the court concludes that no preliminary injunctions should issue. In reaching this determination, the court is mindful of the teaching of **Packaging Indus. Group, Inc. v. Cheney**, 1980 Mass. Adv. Sh. 1189, 1196-1197. While the plaintiffs persuasively argue that the denial of injunctive relief will subject them to a substantial risk of irreparable harm,[5] the critical inquiry requires a balancing of this harm "in light of the party's chance of success on the merits." **Id.** at 1197. In view of the authorities cited above, the court is not convinced that the plaintiffs have a reasonable likelihood of successfully pursuing their claims.[6] Accordingly, the plaintiffs' applications for preliminary injunctions are DENIED.

**William G. Young**
**Justice of the Superior Court**

[2]Paragraph XI of the New England Telephone and Telegraph Company General Regulations provides as follows:

USE OF SERVICE FOR UNLAWFUL PURPOSES
The service is furnished subject to the condition that it will not be used for an unlawful purpose. Service will not be furnished if any law enforcement agency, acting within its discretion, advises that such service is being used or will be used in violation of law. If the Telephone Company receives other evidence that such service is being or will be so used, it will either discontinue or deny the service or refer the matter to the appropriate law enforcement agency.

[3]The plaintiffs also argue that because G.L. c. 271, §47 speaks of the "reinstallation" of the telephone of a person "convicted" of illegal gaming activity, the statute should not serve as a basis for service termination. But the statute also requires a delay in reinstallation regardless of whether a conviction was obtained, thus undermining the plaintiffs' argument. The plaintiffs' contention implicates an additional matter, initially raised during the hearing, concerning the breadth of the regulation. While the defendant points out that the regulation was triggered by G.L. c. 271, §47, it is clear that the scope of the regulation goes beyond that specific section. The regulation, however, may be sustained on two grounds. First, the regulation is the product not of section 47, but of chapter 271 itself. Hence, the substance of the regulation is not chained to the wording of section 47. Second, in the field of administrative law, agency regulations are valid and have the force of law unless "plainly and palpably inconsistent" with the governing statute. Boske v. Comingore, 177 U.S. 459, 470 (1900); Mt. Vernon Coop. Bank v. Gleason, 250 F.Supp. 952, 954 (D.Mass.), aff'd, 367 F:2d 289 (1st Cir. 1966). The defendant's regulation furthers the overall purposes of the gaming provisions of chapter 271.

[4]The defendant's decision to notify the plaintiffs ten days in advance of service termination evidences its intent to follow the federal practice outlined in 18 U.S.C. §1084(d). The constitutionality of this statute was upheld in the Telephone News decision. Serious questions as to the validity of the termination regulation would arise if the defendant strictly adhered to the terms of the regulation, which has no provision for review of the bare allegations of the police prior to the termination of service.

[5]Of course, the countervailing risk of harm to the public, should illegal gaming continue over the telephone lines in question, is also significant.

[6] the denial of injunctive relief applies to all the plaintiffs before the court. At the hearing on this matter, various plaintiffs argued that they had no knowledge that their telephone lines were being used for illegal purposes. Assuming the validity of these contentions, it is clear that the regulation is directed at the service itself, not at the individual subscriber. Such a determination makes good sense, as it is the telephone itself, not its users, which supplies the lifeline to vital

gaming information. See, McBride v. Western Union Tel. Co., 171 F.2d 1, 3 (9th Cir. 1948); Telephone News Sys., supra, at 631.

Two final points deserve mention. First, the plaintiff Andy's Sportswear, Inc., argued at the hearing that because its employee, amedeo Accamando, was indicted solely under G.L. c. 271, § 17, dealing with gaming places, and not under G.L. c. 271, § 17A, dealing with gaming telephones, no termination of telephone service may occur. The provisions of G.L. c. 271, § 47, however, encompass instances of violation of any aspect of the whole of chapter 271; hence, the procedures are not restricted to any of its constituent parts.

Second, the factual dissimilarity presented by the plaintiff Raymond Naymie, on behalf of the Lebanese Civic Association of America, requires individual attention. The pay telephone of the Association's premises is listed to Francis Howard, a former member of the Association. Neither Howard nor any individual member of the Association has been arrested or indicted with relation to pay any illegal conduct on the Association's premises, according to Naymie's complaint. Rather, it appears from Trooper Naimovich's supplemental affidavit that the pay telephone was utilized by Richard Assad and George Homsy for gaming purposes. In denying a limited injunction as to this particular telephone, the court reiterates that it is the service, and not the subscriber, that is at issue. While the equities weigh more heavily in favor of this particular plaintiff, the decision to deny relief is supported by the absence of a showing that the Association is unable to procure a regular business phone. See Rubano v. New York Tel. Co., 43 Misc.2d 149, 150-151, 250 N.Y.S.2d 373, 374-375 (1964).